FIRST NATIONAL BANK OF GOREE v. W. T. TALLY.

No. 4511.    Decided June 26, 1926.

(    S. W.,    ).

**1.—Check—Presentation—Acceptance or Payment.**

The presentation for payment of a check on a bank payable on demand does not constitute a presentation of same for acceptance under the Negotiable Instruments Act (Vernon's Sayles' Ann. Civ. Stats., Supplement of 1922, Art 6001a, Sec. 137) which distinguishes between presentation for such purposes. (Pp. 595-597).

**2.—Same—Acceptance of Check.**

A check on a national bank, payable on demand and received for collection by the Federal Reserve Bank, was forwarded by it to the drawee

with instructions to telegraph in case of non-payment. Such presentation being for payment, not for acceptance, the failure of the drawee to return the check, accepted or non-accepted, to the holder within twenty-four hours after delivery did not render such bank liable as an acceptor of the check under Section 137 of the Negotiable Instruments Law. (Pp. 592-597).

Question certified from the Court of Civil Appeals for the Eleventh District in an appeal from Eastland County.

The Supreme Court referred the question certified to the Commission of Appeals, Section B, for its opinion thereon, and here adopts same and directs that it be certified as the answer of the court.

*Dickson & Newton* and *D. J. Brookerson,* for appellant.

Evidence that a check handled as a cash item, through corresponding banks, was sent to the bank on which it was drawn for payment, is not proof that it was presented for acceptance as contemplated by the Negotiable Instruments Law, and an issue submitted to the jury under such evidence is immaterial, especially where there is no allegation that such check was ever presented for acceptance or that its return was refused after request for such.

*T. R. Odell, Joe Wheat, B. F. Reynolds* and *A. M. Howsley,* for appellee.

A check presented to a bank in the usual way is presented for all purposes and any testimony tending to show that said check was presented in the usual and customary way is admissible. Bull v. Novice State Bank, 250 S. W., 232; Commercial State Bank v. Harkrider-Keith-Cooke Co., 250 S. W., 1069; Negotiable Instruments Act, Art. 6001-137.

MR. JUDGE SPEER delivered the opinion of the Commission of Appeals, Section B.

"This is a suit by W. T. Talley, appellee against the appellant First National Bank of Goree, a resident of Knox County, Texas, and against J. E. Beck, a resident of Throckmorton County, and brought in the District Court of the latter county. The suit is upon a check drawn by Beck on the appellant bank in favor of appellee for the sum of $1,318.00 given in payment for certain cattle sold by appellee to said Beck. The check was in due course deposited by appellee in his bank at Throckmorton and by said bank duly forwarded to its correspondent at Fort Worth and by the latter forwarded to the Federal Reserve

Bank at Dallas for collection. The Federal Reserve Bank in due course forwarded said check, together with other items also drawn on the appellant bank to the latter for payment. In connection with the items forwarded for payment said Federal Reserve Bank, addressed a letter to appellant bank instructing the latter to telegraph non-payment of items of $500.00 or over.

"The case was submitted to the jury on special issues as follows:

*"Special Issue No. 1:*

"Did the cashier of defendant bank agree with defendant J. E. Beck to loan him money with which to buy cattle in Throckmorton County, Texas, on or about October 1st, 1923?

*"Special Issue No. 2:*

"If you have answered Special Issue No. 1 above in the affirmative, then answer the following special issue: Did the defendant J. E. Beck represent to plaintiff W. T. Talley, at the time he, the said J. E. Beck, bought plaintiff's cattle, that he had made arrangements with defendant bank to buy cattle in Throckmorton County, Texas, and pay for same by checking on defendant bank?

*"Special Issue No. 3:*

"If you have answered Special Issue No. 2 in the affirmative, then answer the following issue: Did the plaintiff Talley rely on said representations of defendant J. E. Beck, when he parted with title and possession of his cattle?

"Did the defendant, The First National Bank of Goree, refuse within twenty-four hours after the check in controversy was presented to it (or within such period as the holder may have allowed) if any, to return the same accepted or non-accepted to the holder of said check?"

The jury answered all of the foregoing issues in the affirmative.

"There was no other evidence of a demand and refusal on the part of appellant bank to return said check, other than it did not telegraph non-payment of the check sued on, nor return the same to the Federal Reserve Bank within twenty-four hours.

"The disposition of the appeal turns on the question as to whether under the foregoing findings and evidence, the appellant bank under Article 6001-A, Section No. 137, Complete Texas Statutes, 1920, Vernon's Sayles' Annotated Civil Statutes, Supplement 1922 can be said to have accepted the check in question for payment, and is, therefore, liable for the payment

of same. In this connection it is deemed material to state that the appellant bank is incorporated under the National Banking Act of the United States and the evidence further shows without contradiction that at the time of the transaction in question, the said J. E. Beck was indebted to the appellant bank in an amount equal to 10% of the combined capital stock and surplus of said bank and in excess of 30% of the capital stock of said bank, and that said Beck at the time said check was presented for payment, had no funds on deposit with appellant bank with which to pay the same and that if the bank is held liable for the payment of said check it will increase the indebtedness by said Beck to appellant bank in an amount in excess of the amounts which said bank would be authorized to loan said Beck under Article 9761, United States Compiled Statutes.

"In view of the holding of the Honorable Court of Civil Appeals for the Second District in the case of Commercial State Bank v. Harkrider-Keith-Cooke Co., 250 S. W., page 1069, to the effect that the retention by a bank of a check drawn on it for more that twenty-four hours after said check had been presented for payment, renders said bank liable as an acceptor of said check under the statutes referred to, the conflict in the authorities from other jurisdictions on this question of law as shown in the notes to the case of Wisner v. First National Bank, 17 L. R. A., N. S., page 1266, and the statements in the opinion in Lone Star Trucking Co. v. City National Bank of Commerce (Tex. Civ. App.), 240 S. W., page 1000, Brannon's Negotiable Instruments, page 369, and the provisions of the United States Statutes referred to, together with the rule as announced in Fields v. Multnomah County, 128 Pac., page 1045, 44 L. R. A. (N. S.), 322; and in authorities cited in Citizen's National Bank v. Stevenson (Com. App.), 231 S. W., page 366 (loco cit.), 366, we deem advisable to certify to your honors the following questions:

"*Question No. 1:*

"Does the retention for more than twenty-four hours by a bank of a check forwarded to it for collection and payment render such bank liable as an acceptor of said check under said Section 137, of the Negotiable Instruments Act?

"*Question No. 2:*

"Is the evidence above detailed sufficient to raise the issue of a refusal of appellant bank to return the check in question, within twenty-four hours as found by the jury so as to render

appellant bank liable as an acceptor of said check under the Negotiable Instruments Act?

"*Question No. 3*:

"Would the construction of said Section No. 137, so as to render appellant bank liable on said check and thus increase the indebtedness of J. E. Beck to it in excess of the amount to which said Beck could become indebted to it under Article 9761, United States Compiled Statutes, render said Section 137 invalid as being in violation of Article 9761, United States Compiled Statutes?"

The following provisions of our Negotiable Instruments Act are pertinent:

Article 6001-132 of the Negotiable Instruments Act (Vernon's Texas Civil Statutes, 1922 Supplement, Art. 5941, Sec. 132, R. C. S. 1925):

"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

Section 137 of the same article:

"Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within 24 hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or non-accepted to the holder, he will be deemed to have accepted the same."

Section 185:

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

Section 187:

"Where a check is certified by the bank upon which it is drawn the certification is equivalent to an acceptance."

And Section 188:

"Where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon."

At this point it is well to notice the distinction between presentment for acceptance and presentment for payment. Sections 70 to 88 of the article above cited deal specifically with the matter of presentment for payment. Presentment for payment and presentment for acceptance are two different acts well

known to the law of negotiable instruments, and the distinction is made clear by the terms of the Negotiable Instruments Act. The difference between the object and effect of presentation for these respective purposes is very marked. The phrases themselves suggest the material distinction. "Payment" and "acceptance" when applied to comercial paper mean very different things. Payment extinguishes the debt and puts an end to the paper evidencing the same, while acceptance has the very opposite effect. It creates a new liability upon the part of the acceptor, and gives new life to the instrument. In Loan Star, etc. Co. v. Bank, 240 S. W., 1000, this distinction is discussed, and the following quotation given from Brannon's Negotiable Instruments Law, page 369:

"The court (a Kansas case) failed to distinguish between the presentation or delivery for acceptance and presentment for payment. The check was not delivered for acceptance, either by the payee or by the wrongful possessor. If the bank refused to return the check to the payee, his remedy was an action for conversion of the check."

The same distinction is recognized in Rodgers v. Farmers Bank, (Tex. Civ. App.), 264 S W., 491 where it is said:

"The fact that the check was not returned to the Temple Bank within twenty-four hours after its receipt by the Nolanville Bank would be sufficient to bind it as acceptor under Section 137 *if it were sought to hold it as such.*" (Italics ours.)

First National Bank v. Whitman, (U. S.), 24 L. Ed., 229, discusses the matter we are considering. In that case it is said:

"We cannot recognize the argument that payment of the amount of a check or sight draft under such circumstances (unauthorized endorsement) amounts to an acceptance, creating a privity of contract with the real owner. It is difficult to construe payment as an acceptance under any circumstances. The two things are essentially different. One is a promise to perform an act, the other an actual performance. A banker or an individaul may be ready to make actual payment of a check or draft when presented, while unwilling to make a promise to pay at a future time. Many, on the other hand, are more ready to promise to pay than to meet the promise when required. The difference between the transactions is essential and inherent."

See also First National Bank, Etc. v. Brule National Bank, Etc. (S. D.), 161 N. W., 616, 12 A. L. R., 1079.

Now, it is not necessary either by the law merchant or the

Negotiable Instruments Act that a check, which is of course payable on demand, should be presented for acceptance at all, but it is perfectly clear under the decisions and the terms of the act itself that such paper may be presented for acceptance. Indeed, by express provision of the act (Sec. 138) an overdue bill or one that has been dishonored by previous refusal to accept or pay, may be accepted. 8 C. J., p. 301, Sec. 475.

The case of Commercial State Bank v. Harkrider-Keith-Cooke Co., 250 S. W., 1069, cited in the certificate, is not necessarily in conflict with our holding, since it appears that the drawee bank to whom the check in that case was sent for payment, handled the paper in such a way as probably to make it liable, but not upon the theory of acceptance. The case of Wisner v. First National Bank, etc. (Pa.), 68 Atl., 955, 17 L. R. A., N. S., 1266, cited and relied upon by the Court of Civil Appeals in the Harkrider-Keith-Cooke case appears to have been a case of presentation for acceptance, and not for payment. It says:

"The failure or neglect of a drawee to whom a bill is *delivered for acceptance* to return the bill accepted or non-accepted to the holder within twenty-four hours after delivery makes the drawee an acceptor of the bill. It therefore follows in the case in hand that the defendant bank having failed to return the five checks to the collecting bank within twenty-four hours after their delivery to the drawee, the latter must be deemed to have accepted the checks, and is therefore liable to the plaintiff for the amount of them." (Italics ours.)

Question No. 1 certified shows very clearly that the check in this instance was forwarded and presented to the drawee for payment. This was not a presentation for acceptance. If the First National Bank of Goree upon receipt of the check from the Federal Reserve Bank at Dallas had accepted and returned the same to the Federal Reserve Bank, this would not have been responsive, for the Federal Reserve Bank had not presented it for any such purpose. It was presented for payment and the rights and duties of the respective parties are in no manner controlled by the law with respect to presentation and acceptance of commercial paper. So that, we recommend that Question No. 1 be answered "No." This renders the other questions immaterial, and they need not be answered.

Opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals. *C. M. Cureton,* Chief Justice.