**LIPSHITZ et al. v. LINDSAY NAT. BANK et al.**

**No. 12352.**

Court of Civil Appeals of Texas. Fort Worth.
July 5, 1930.

Rehearing Denied Sept. 27, 1930.

also attached to the draft an invoice purporting to show the contents of the car, consisting of from one to forty-three sacks each of aluminum, copper, iron, brass, zinc, babbitt, pewter, tinfoil, brass bearings, battery lead, radiators, and inner tubes. The weights and prices of these commodities were listed in the invoice, all showing an aggregate value of $923.76, less certain credits, including the amount of the draft for $645.72, and leaving a balance after allowing those credits of $71.74.

At the time of the delivery of the draft to the Lindsay Bank, that bank advanced to Karchmer the full face value thereof by placing that amount to his credit in the bank, in which he was a regular customer, and which was afterwards drawn out by Karchmer. The Lindsay Bank took the draft in good faith, with no notice of any fraud on the part of the drawer, and believing that the same was valid and that it would be accepted by the drawee, and sent the draft with the bill of lading and invoice attached to the Citizens' National Bank at Waco, with instructions to collect it and return the money to the sender. The Citizens' National Bank presented the draft to Lipshitz, the drawee, who gave to that bank his check upon the Liberty National Bank of Waco for the full amount of the draft, and upon so doing the Citizens' National Bank delivered to him the draft and bill of lading and invoice. Lipshitz then opened the car by breaking the seal thereon, and upon an inspection of the contents thereof he discovered that it did not contain the articles shown in the bill of lading and invoice, but contained only a quantity of bones of the total value of about $54. Upon making that discovery, Lipshitz notified the Liberty National Bank not to pay the check which he had given on it, that notice being given about one hour after he had delivered his check to the Citizens' National Bank; that delivery being about 3 o'clock in the afternoon of August 6th. By reason of that fact, the check was never collected, although it was presented to the Liberty National Bank by the Citizens' National Bank by 9 o'clock the following morning.

Immediately after Lipshitz notified the Liberty National Bank not to pay the check, he returned to the Citizens' National Bank the draft, bill of lading and invoice, and refused to accept the shipment from the railway company.

The Citizens' National Bank then returned to the Lindsay National Bank of Gainesville the draft with the bill of lading and invoice attached, with the notation of its payment erased, and at the same time notified the Lindsay Bank of the refusal of Lipshitz to accept the shipment and to pay the draft. Thereafter the junk contained in the car, which was all that had ever been loaded into it by Karchmer, was sold by the railway

Spell, Naman & Penland and Trippet, Richey & Sheehy, all of Waco, for appellants.

Ray Winder, Edwin M. Fulton, and Garnett & Garnett, all of Gainesville, for appellees.

DUNKLIN, J.

On August 3, 1928, S. Karchmer, doing business in Gainesville, Tex., under the trade name of S. Karchmer Company, drew a draft on Louis Lipshitz, doing business in the city of Waco, Tex., under the trade-name of Lipshitz Smelting & Refining Works, for the sum of $645.72, payable to the order of the Lindsay National Bank, doing business in the city of Gainesville. Karchmer attached to the draft a bill of lading issued by the Gulf, Colorado & Santa Fé Railway Company, covering a car purported to be loaded with 30,000 pounds of junk, rubber, and scrap. There was

company to meet the freight charges on the shipment after payment of which had been refused by Karchmer and the Lindsay Bank, and after Karchmer and the Lindsay National Bank had refused the junk which was duly tendered to them by the railway company.

This suit was instituted by the Lindsay National Bank against the Citizens' National Bank of Waco, Louis Lipshitz, the drawee, Karchmer, the drawer, and the Gulf, Colorado & Santa Fé Railway Company to recover the amount which plaintiff had paid to Karchmer at the time it took over the draft, and which amount it had been unable to collect from Karchmer. Judgment was rendered denying plaintiff a recovery against Karchmer, but awarding to plaintiff a recovery against the Citizens' National Bank of Waco and Lipshitz for the amount of plaintiff's demand; and also in favor of the Citizens' National Bank over against Lipshitz; in favor of Lipshitz against Karchmer; and in favor of the railway company as against the claims asserted against it by the plaintiff and the other parties to the suit on their respective cross-actions. From that judgment the defendants Citizens' National Bank and Louis Lipshitz have prosecuted this appeal.

The trial was before the court without a jury, and the findings of fact by the trial judge are recited in the judgment. It was recited in the judgment that the acceptance of the Lipshitz' check by the Citizens' National Bank, as a matter of law, was a payment of the draft.

■ The facts all show that the Citizens' National Bank accepted the check in the usual course of business without any understanding or agreement with Lipshitz that the same would be an unconditional payment of the amount thereof, irrespective of whether or not it would be collected. Under those circumstances, manifestly, the court erred in holding that such acceptance of the check was a full satisfaction of the draft although it was never in fact paid; and especially after Lipshitz discovered the fraud attempted by the drawer of the draft. See Middlekauff v. State Banking Board, 111 Tex. 561, 242 S. W. 442. Furthermore, in 7 Corpus Juris, 701, the following is said:

■ "As a general rule the drawer of an uncertified check can revoke his order for the payment of his funds, or in banking phraseology 'stop payment' at any time before the bank's acceptance of the check, and the bank is bound by such revocation and has no right to pay the check after notice thereof."

The judgment rendered by the trial court contained these findings:

"The court finds that the defendant Karchmer and defendant Lipshitz had prior to said August 3, 1928, contracted partly in writing and partly orally, for the shipment by Karchmer to Lipshitz of the car of junk aforesaid, and that several similar shipments of junk had theretofore been made by defendant Karchmer to defendant Lipshitz, and that said prior shipments had been handled in a similar manner to the shipment involved in this suit and that plaintiff bank had obtained draft and bill of lading covering such shipments in the same manner as in the case of the shipment involved in this suit, which prior drafts had all been duly and promptly paid.

\*　　\*　　\*　　\*　　\*　　\*

"That defendant Lipshitz had sufficient funds on deposit in said Liberty National Bank to pay said check on August 7, 8 and 9, 1928, and the same would have been paid if it had been presented to said bank on said dates had not defendant Lipshitz stopped payment thereon as aforesaid.

\*　　\*　　\*　　\*　　\*　　\*

"The court finds as a matter of law that the pleading and proof of defendant Citizens National Bank of a custom of banks to accept in payment of drafts checks of solvent individuals is insufficient as a defense for said defendant bank and that such a custom or practice of said defendant bank is invalid and illegal as to the plaintiff, Lindsay National Bank.

\*　　\*　　\*　　\*　　\*　　\*

"The court finds as a matter of law that defendant, Citizens National Bank, was negligent in turning over and delivering to defendant Lipshitz the draft, bill of lading and invoice, involved in this suit, without requiring payment therefor in money or its equivalent, and that the acceptance by said defendant bank of said check of defendant Lipshitz was at the election and risk of said defendant Bank."

■ Those findings that the draft in controversy was handled in the same manner as other drafts by the same drawer were handled on prior occasions, and that it was the custom of banks to accept in payment of drafts checks of solvent individuals, necessarily refutes and overcomes the further finding that the Citizens' National Bank was guilty of actual negligence in failing to collect the draft in money instead of accepting a check in payment therefor; and, plaintiff's cause of action against the Citizens' National Bank being based entirely upon such alleged negligence on the part of defendant bank, judgment should have been rendered in favor of the defendant bank by reason of that fact alone; and in this connection it is to be noted that, according to plaintiff's pleadings and its evidence, the draft was sent by it to the defendant bank for collection, and not merely to procure Lipshitz' acceptance of it. Another reason why the plaintiff failed to establish a right of recovery against the Citizens' National Bank was that it suffered no damage as a result of the failure of that bank to

collect the draft, since that draft with bill of lading and invoice were all returned to the plaintiff bank; thus leaving in the latter bank all the rights it had under those instruments, before they were ever sent off for collection of the draft.

Section 132, article 5941, Rev. Civ. Statutes of 1925, included in what is known as the "Negotiable Instruments Act," reads as follows:

"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money.".

In First National Bank of Goree v. Tally, 115 Tex. 591, 285 S. W. 612, 613, by the Commission of Appeals and adopted by the Supreme Court, the following is said:

"Presentment for payment and presentment for acceptance are two different acts well known to the law of negotiable instruments, and the distinction is made clear by the terms of the Negotiable Instruments Act. The difference between the object and effect of presentation for these respective purposes is very marked. The phrases themselves suggest the material distinction. 'Payment' and 'acceptance,' when applied to commercial paper, mean very different things. Payment extinguishes the debt and puts an end to the paper evidencing the same, while acceptance has the very opposite effect. It creates a new liability upon the part of the acceptor, and gives new life to the instrument." Then follows a citation of several other decisions of the same effect, including First National Bank v. Whitman, 94 U. S. 343, 24 L. Ed. 229.

■ Since Lipshitz did not indorse on the draft his acceptance of it, but only delivered his check therefor, the plaintiff had no cause of action against him as an acceptor. The basis of plaintiff's suit against him was upon allegations that he did accept the draft; and, since he countermanded his check after he discovered the fraud attempted to be perpetrated upon him by Karchmer, as he undoubtedly had the right to do, there was no basis for recovery against him. Under such circumstances, the plaintiff bank had no greater right of recovery against Lipshitz than Karchmer himself, who had perpetrated the fraud. Commercial Bank of Chicotah v. First State Bank & Trust Co. of Santa Anna (Tex. Civ. App.) 153 S. W. 1175.

■ Even though a right of recovery had been established against the Waco Bank or Lipshitz, the amount for recovery would have been diminished by some one of the bank balances which Karchmer had to his credit in the plaintiff bank after that bank had been notified that the draft had been dishonored and which balance the plaintiff bank could and should have applied in part payment of the draft. Second National Bank v. McGehee (Tex. Civ. App.) 241 S. W. 287.

■ On the bill of lading were the following initials "S. L. C.," meaning in railroad parlance that the shipper loads and counts the contents of the car; and on the occasion of this shipment the car was loaded and sealed by Karchmer, and the railroad company never knew of its contents until after it was opened by Lipshitz in Waco. It was found by the court, in accordance with uncontroverted testimony, that the car reached Waco in good condition and with all the contents that had been placed therein by Karchmer; hence the railroad company was guilty of no negligence in handling the shipment, and the judgment discharging the railroad company from liability as to all parties was correct. The judgment denying plaintiff a recovery against Karchmer manifestly was erroneous.

For the reasons noted, the judgment of the trial court will be reformed and judgment will be here rendered as follows: In favor of the plaintiff against Karchmer for the full amount of the debt sued for and for all costs of the suit; but denying plaintiff any recovery against the defendant Citizens' National Bank of Waco or the defendant Lipshitz; in favor of the Gulf, Colorado & Santa Fé Railway Company as against the demand of plaintiff and of all of its codefendants. And it follows from the foregoing that all other pleas over against the different parties to the suit will be denied.

This disposition of the case renders it unnecessary to determine the merits of other assignments by defendant bank and defendant Lipshitz to the action of the court in overruling pleas of privilege presented by those defendants.

All costs of this appeal will be taxed against the appellee Lindsay National Bank.

### On Motion for Rehearing.

Appellees' motion to dismiss the appeal by the Citizens' National Bank because its appeal bond to this court was filed more than twenty days after the adjournment of the term of court at which the judgment was rendered was not discussed in our opinion on original hearing, and it is now urged in a motion for rehearing by appellee Lindsay National Bank.

■ The record shows that the appellant Louis Lipshitz did file his appeal bond within the time required by the statute, and that his appeal was duly perfected. As noted in the opinion on original hearing, the judgment in favor of the appellee bank against the Citizens' National Bank and Louis Lipshitz was joint, and the judgment in favor of the Citizens' National Bank over against Louis Lipshitz was dependent upon the judg-

ment rendered in favor of the Lindsay National Bank. It thus appears that the rights of the parties were so intermingled, interdependent, and involved that a reversal of the judgment against Lipshitz would necessarily require a reversal of the judgment against the Citizens' National Bank also, even though no appeal had been prosecuted by it, in order that the rights of all the parties might be fully protected in a final judgment. Many decisions might be cited upholding that general rule of decision. See volume 3, Texas Jurisprudence, p. 1114; Roberts v. Fowler (Tex. Civ. App.) 297 S. W. 339; Thompson v. Kelley, 100 Tex. 536, 101 S. W. 1074; Hamilton v. Prescott, 73 Tex. 565, 11 S. W. 548; Fidelity Oil Co. v. Swinney, 254 S. W. 137, by this court, speaking through Chief Justice Conner, and other decisions there cited.

Accordingly, the motion for rehearing is overruled.