**TYLER BANK & TRUST COMPANY,**
Appellant,

v.

**T. B. SAUNDERS, Appellee.**

No. 6992.

Court of Civil Appeals of Texas.

Texarkana.

Nov. 5, 1957.

Rehearing Denied Dec. 10, 1957.

Lawrence & Lawrence, Reeves & Reeves, Tyler, for appellant.

Smith & Smith, Tyler, Mack Taylor, Ft. Worth, Florence, Florence & Garrison, Gilmer, for appellee.

CHADICK, Chief Justice.

This is a suit founded upon a bank's alleged default under Article 342–704, Vernon's Ann.Tex.Civ.St. of the Banking Code of 1943. The judgment of the trial

court in favor of the plaintiff is affirmed in part and in part reversed and remanded.

The suit was instituted in the District Court of Smith County by T. B. Saunders, d/b/a T. B. Saunders & Company, as plaintiff against the Tyler Bank & Trust Company (formerly Tyler State Bank & Trust Company) as defendant, to recover the sum of $23,808.47. The plaintiff's trial pleading alleged that Shaw Packing Company, a corporation which has now ceased to do business, purchased livestock through T. B. Saunders & Company and authorized that Company to draw drafts on Shaw Packing Company through Tyler Bank & Trust Company for the purchase price, and that T. B. Saunders & Company drew 10 drafts, each of which was held by Tyler Bank & Trust Company for more than 24 hours after it was received, and under the terms of Article 342–704, V.A.T.C.S., that Bank became liable to T. B. Saunders & Company upon the drafts. In the alternative, it was alleged that if the Tyler Bank & Trust Company did not accept the drafts, then it was negligent in holding them for more than 24 hours after receipt and had the Bank acted promptly and within the 24 hours after receipt of the drafts, T. B. Saunders & Company would not have continued to accept drafts drawn upon Shaw Packing Company and would not have continued to sell Shaw Packing Company cattle and hogs.

The Bank answered and set up defenses of estoppel, waiver, election of remedy, laches, and that T. B. Saunders & Company expressly agreed and directed that the Bank hold the drafts longer than 24 hours.

Trial was before a jury and at the conclusion of the testimony on plaintiff's motion the court instructed a verdict and rendered judgment in favor of T. B. Saunders & Company against Tyler Bank & Trust Company on each of the drafts involved.

The Bank, being dissatisfied with the judgment, has appealed and seeks review by this Court of matters covered by its six points of error. The evidence necessary to an understanding of this opinion will be set out in connection with each of the points discussed.

Appellant contends by its first point of error that Article 342–704 of the Banking Code does not impose liability on it as a collecting bank because the drafts do not show the Bank to be a "drawee bank" under the statute. For a clear discussion of this point, the Article under which liability is asserted, Article 342–704 of the Banking Code, the first bank draft offered in evidence by Saunders, the letter of transmittal and tracer concerning it, are copied in full. The three instruments copied are typical of all the drafts, transmittal letters and tracers in the case, except one letter of transmittal which is separately discussed under Point 3.

Article 342–704.

"Except where otherwise provided in this Code, or by express agreement of the parties, items presented to a drawee bank shall be received by it, subject to final adjustments and all clearing house settlements, checks, drafts, credits, advances of money, charges, or entries to accounts, (including sight posting), shall be conditional and subject to revocation during the day on which the item is presented (or in case of a time item, the due date), or within twenty-four (24) hours after presentment, exclusive of Sundays and holidays, if it is finally determined that the drawee bank was not at the time of presentment (or in case of a time item, the due date) authorized or obligated to pay the item, and if the drawee bank shall within that time refuse payment and return the item, or undertake to give notice in the manner hereinafter prescribed:

"1. If the item is presented across the counter for payment in cash or for deposit in the drawee bank the drawee bank shall exercise a reasonable diligence within the time above prescribed to give notice, by mail or otherwise, to the bank or person presenting the item

that it has refused payment and that it holds the item subject to its or his order.

"2. If the item is presented through a clearing house, the drawee bank shall, within the time prescribed, return the item to the clearing house presenting it.

"3. If the item is presented by mail, the drawee bank shall within the time above prescribed deposit the item in the mail properly stamped and addressed to the bank or person presenting the * * * item, or the actual receipt of the returned item by the person, bank or clearing house, as provided in Sections 2 and 3 above, shall constitute dishonor within the purview of Article 5938 of the Revised Civil Statutes of Texas. If the drawee bank in refusing payment of any item fails to comply with the provisions of this article within the time above prescribed it shall, at the election of the owner of the item, be deemed to have accepted the item, and shall be liable for the amount thereof. If an item is presented by a bank as agent or subagent of owner, such bank may, in the absence of definite instructions from the owner, exercise the election herein provided for."

| | | | |
|---|---|---|---|
| | T. B. Saunders & Co. | | No. |
| | Live Stock Exchange Bldg. | | |
| (Insignia) | | | |
| | Ft. Worth, Texas | 9-25 | 194 |
| | | N.P. | |
| Pay To The Order Of | T. B. Saunders & Co. | 375 | $1642.90 |
| T B Saunders & Company | $1,642 & 90 Cts | | Dollars |
| | | with exchange | |
| TO   Shaw Pkg Co | | T. B. Saunders & Company | |
| Tyler State Bank & Tr Co | | By S Anderson | |
| . Tyler, Tex | | | |

"Transit Department  The Fort Worth National Bank  Fort Worth, Texas  OCT 1 1951  Date

We enclose for collection and remittance or credit only when paid.

Drawn On  Shaw Pkg. Co. Exc.

Endorser 923

Amount 1,642.90 #,

Instructions

This is a Cash Item and was accepted by us with the understanding that it would be paid upon presentation. If not paid the same day you receive it, please return at once, do not hold it for any reason.

Deliver documents only on payment of items to which they are attached.

TO   Tyler State Bank & Trust Company Tyler Texas

Wire non-payment of items $1,000.00 and over, except those not paid because of missing, irregular or unsatisfactory endorsement.

Do not protest items $500.00 or under, or those bearing this stamp _____ or similar authority of a preceding   1 N.P.   endorser."
1 37-5

"The Fort Worth National Bank
"Established 1873
"Fort Worth, Texas
"October 22, 1951

"Tyler State Bank & Trust Co.
"Tyler, Texas
"Gentlemen:

"On October 1, 1951 we sent you for collection Draft drawn on Shaw Pkg. Co. for $1,642.90 upon which we appear to be without returns.

"Please Advise Present Status Of This Item

"Our customer deposited this draft as a cash item, anticipating it would be paid on presentation. If for any reason, it has not been paid on receipt of this letter, please return it at once giving reasons for non-payment.

"Thanking you we remain,

"Yours very truly

"/s/ R. L. Cotton
"R. L. Cotton, Manager,
"Transit Department."

The last paragraph, beginning "Our customer", though still visible was practically blotted out and must be construed as having been intentionally deleted by the Fort Worth Bank; a similar deletion occurs in all transmittal letters.

■ A construction of this section of the Banking Code as contended here has not been directly passed upon by the courts, but from a reading of the opinion, it appears that the drafts in the case of Carder v. Tyler Bank & Trust Co., D.C., 132 F.Supp. 495, affirmed 5 Cir., 224 F.2d 687, were very similar to those in this case but the language of the opinion does not foreclose the question. In College Station State Bank v. Fulcher, Tex.Civ.App., 296 S.W.2d 953, no writ history, a similar point, if raised, was decided without discussion adversely to the contentions here made. The record of that case is in this Court and an examination of the draft exhibit in it shows that the draft was drawn identically with the drafts in this case in that the draft was "to" College Station State Bank and on the line immediately under was written "Ed Cross Dealers Auto Sales," as in this case on the top line is "Shaw Packing Co." and under it, "Tyler State Bank & Trust Co." Aside from such authority as these cases may be, the Banking Code by Article 342-701, subsec. (b), defines a "drawee bank" as " * * * the bank against which an item is drawn and by which an item is payable, including banks issuing cashiers' checks, or accepting drafts." And subsec. (d) goes on to say: "The term 'item' means a check, note or other negotiable or non-negotiable instrument providing for the payment of money." The draft heretofore set out shows that it is directed "to" Shaw Packing Company and "to" Tyler State Bank & Trust Company, so it seems clear that Tyler State Bank & Trust Company is a "bank against which an item is drawn * * *", within the very language of the definition. Further in this connection, being so drawn would not diminish the validity of the draft as Article 5940, Sec. 128, the Negotiable Instrument Act, provides "a bill may be addressed to two or more drawees jointly, whether they are partners or not * * *".

■ If it may be said that the draft as drawn is ambiguous, then the construction placed upon the transaction by the parties themselves, that is, the Fort Worth Bank and the Tyler Bank, indicates that each considered the Tyler Bank to be the

bank upon which the draft was drawn and by which it was payable, and the Tyler Bank entered such role without question or protest. This construction placed upon the ambiguous instrument by the parties is binding upon them. See cases listed in Note 7, 10 Tex.Jur. 298.

At the time of the enactment of the Banking Code in 1943, the case law of this state as expressed in First National Bank of Goree v. Talley, Tex.Com.App., 115 Tex. 591, 285 S.W. 612, made a distinction between duties and liabilities of a bank on the presentation of an item for acceptance and one presented for payment. That case in construing the Negotiable Instrument Law held that under Sec. 137, a bank became liable on holding an item more than 24 hours only when the item was presented for acceptance, but not if presented for payment. The language of the Banking Code of 1943 seems to refer to items presented for payment, and in the light of the decision last mentioned, it is a fair construction that the Legislature intended to create an irrebuttable presumption that a bank had accepted an item for payment and would pay the same unless such acceptance was waived if it failed to return the item or give notice in the time and mode prescribed. Such construction removes the distinction in a bank's liability between items presented for payment and those presented for acceptance. Thus, under any approach to a determination of this question known to the Court or suggested by counsel, the Tyler Bank is the drawee bank as contemplated by the statute. It is concluded that the trial court properly held that the Tyler Bank is a "drawee bank" in the drafts giving rise to this litigation, and as such answerable for its defaults, if any, under Article 342–704.

Point 3 is concerned with a draft dated September 26, 1951, in the amount of $2,-527.70 which was deposited by Saunders with the Fort Worth National Bank on October 1, 1951, and was received by the Tyler Bank on October 3, 1951. The letter of transmittal of the Fort Worth Bank had the typical instructions elsewhere set out in this opinion with the additional instruction, "Please acknowledge receipt and hold for arrival." This instruction was explained by an officer of the transmitting bank to mean that the Tyler Bank was to hold the draft until the livestock for which the draft was payment had been received by Shaw Packing Company. The evidence in the record is subject to the construction, and it probably was a fact, that the livestock had been received by Shaw Packing Company before the draft reached the Tyler Bank, but there is no evidence that the Bank had such knowledge. Article 342–704 of the Banking Code has not been construed by the courts of this state in the light of similar facts and this appears to be a question of first impression.

The Article makes an exception in its initial language, saying, "Except where otherwise provided in this Code, or by express agreement of parties," the drawee bank will be presumed to have accepted and become liable for the amount of the item if it fails to return the draft within 24 hours after receipt. The letter of transmittal expressly instructs the Tyler Bank to hold the draft and await arrival of the purchased livestock. The record does not reflect upon whom the duty rested to advise the bank of the arrival of the livestock, nor that by custom or practice it assumed any responsibility in this respect. In the absence of evidence that the Bank was advised of the arrival of the livestock the instruction to hold the draft remained in effect and constituted a waiver of the requirement that the Bank pay the draft or return it within 24 hours. It would not be unreasonable to assume that the same source that instructed the bank to hold the draft would advise it of the arrival of the livestock. Another question might be presented under the contention that holding the draft was negligence but no evidence was offered or issue in this respect submitted to the jury. As elsewhere discussed, it appears that the case was tried upon an

erroneous theory and under Jackson v. Hall, 147 Tex. 245, 246, 214 S.W.2d 458, it is thought that remand is proper as to this item of the judgment.

Point 6 is concerned with the exclusion of the testimony of the witnesses Cotton, Graves, Tyler, Rhone and Stringer. As previously mentioned, Article 342–704 excepts express agreements from its operation. These witnesses were offered by the Bank to testify that in certain telephone conversations by them as representatives of the Taylor Bank with the Fort Worth Bank's and Saunders' representatives that Saunders expressly agreed and directed the Tyler Bank to hold all the drafts involved except the first, dated September 26, 1951, in the amount of $1,642.90, and the second of September 26, 1951, for $2,527.70. This last is the subject of Point 3.

The following questions were propounded to the witness Stringer and he answered as follows:

"Q. I want to ask some questions with reference to the period of 24 hours from the time that your bank received these drafts, what was the time of each conversations—the time of these conversations that you, Mr. Tyler or any other one for the Tyler Bank & Trust Company had any conversation with the Fort Worth Bank or with the Plaintiff, or the Plaintiff's agent, Mr. Graves?

"A. With all of the drafts except the first two, I think we did report back to them within a 24-hour period, or less, on every draft except the first two. The first two drafts arrived at our Bank on the 3rd of October and the first telephone conversation that we had, the first report that we made, that we know of, was on the 8th of October. On the 8th of October, two additional drafts came in to our Bank from the Fort Worth bank, and on the 9th of October we reported to them again, Mr. Tyler did, at my directions. Thereafter with the drafts as they came in with the numerous 'phone calls that we had, I think we did report to them within a 24-hour period or less on every one of them.

\* \* \* \* \* \*

"Q. Now, within 24 hours on all except the first two, was there any request from the Fort Worth bank or T. B. Saunders Commission Company for you to hold those drafts for further effort of collection?

"A. Yes, there was on each and every one of them."

In the prefatory statement it is mentioned that the bank's trial answer pleaded that the appellee had expressly authorized the bank to hold the drafts in excess of 24 hours, the specific plea in paragraph 4 of such pleading alleges:

"The Plaintiffs expressly authorized this Defendant to hold and retain each and all and severally the drafts in question beyond the twenty-four hours after the date of the receiving of the same and expressly waived any requirement of law to return the same within the same twenty-four hours, if such requirement of law is applicable to the transaction in question which this Defendant does not admit but expressly denies."

This testimony of the witness Stringer regarding this agreement was excluded on Saunders' objection as follows:

"We offer the same objections that we offered to the testimony of Willard Rhone, if we might do that. \* \* \* That it is an attempt on the part of the Defendant to abrogate the liability, to escape liability as fixed by the banking laws of this State, liability having already been attached to the various items, drafts mentioned by the witness, Stringer; and for the further reason that the various agreements that the witness Stringer \* \* \* has testified to are not definite as to what drafts they pertain to, or what dates

the drafts were received, or in what amounts the drafts were; this being a defensive issue raised by the defendants * * * it would be incumbent upon them to prove specifically the various agreements had as they relate to and pertain to the questioned drafts."

The adopted objection to Rhone's testimony was:

"The Plaintiff in this case objects to the introduction of the evidence by Defendants' witness, Willard Rhone, for the reasons that same is immaterial, irrelevant, would not and could not under any circumstances, as testified to by Mr. Rhone, constitute a defense to the *Plaintiff's* cause of action in this case because the liability of the Defendant bank was already fixed and attached; his testimony being clear that the telephone call to the Fort Worth National Bank, being in response to tracer letter and concerning only two drafts and more than twenty-four hours under his testimony already having elapsed, the liability of the bank was already fixed and attached; and any agreement subsequent to the attachment of liability, could not abrogate the statute."

Leaving out of consideration the first two drafts, Stringer's testimony raises a fact issue as to whether or not before the expiration of 24 hours after receipt of the drafts, the Tyler Bank notified Saunders that they would not be paid and Saunders directed and agreed that the Bank continue to hold them and attempt collection. Article 342–702 states that when an item is deposited with or received by a bank, the bank shall be deemed the agent of the owner of the item. Thus under this record the Fort Worth Bank was Saunders' agent and as such under the authority of Article 342–703 it was authorized "to give reasonable instructions not in conflict with the law or established banking customs and procedure, relative to the method of collection, payment and transmittal of the proceeds."

There seems to be no basis for complaint that such an instruction as testified to by Stringer would be unreasonable since, should a jury give credence to his testimony, no liability could have attached under the statute at the time the instruction was given and the Tyler Bank at that time could have avoided the statutory presumption of acceptance merely by depositing the dishonored draft in the mail.

As noted, there is a dearth of authority construing the Banking Code since its enactment, and it appears no Texas court has decided whether any agreement, as testified to by Stringer, would be a defense under Article 342–704. It was held in City State Bank in Wellington v. National Bank of Commerce of Altus, Okl., Tex.Civ.App., 261 S.W.2d 749, wr. ref., n. r. e., that notification alone within the 24-hour period after receipt of an item was not sufficient to avoid liability, however, since the statute provides for express agreements to supersede its provision and Stringer testifies positively of an instruction to the Tyler Bank "to hold those drafts for further effort of collection," such an order would come within the statutory exception of an express agreement and would waive the liability otherwise attendant upon failure to return the dishonored draft within the 24-hour period. The agreement as Stringer testified to, if made, would be a complete defense to all the drafts in this case except the first two. It follows that the testimony of the witness Stringer was admissible and that it was clearly harmful for the court to exclude it. In discussing the point, reference has not been made to the testimony of other witnesses relative to the agreement testified to by Stringer, but the testimony of these witnesses in so far as it was relevant should have been admitted. The appellant Tyler State Bank's Point 6 is sustained.

Summing up, in view of the conclusion reached, it is ordered that the judgment of the trial court be affirmed as to the draft dated September 25th in the sum of

$1,642.90, and that the judgment be reversed and the cause remanded as to the other nine drafts. It is not necessary to discuss the Tyler Bank's other points of error, but in view of another trial it is suggested that evidence is admissible on the Tyler Bank's affirmative pleas of estoppel, waiver, election of remedy, laches and prior course of dealing without holding that the evidence in that respect in the present record is sufficient to have raised any of those issues.

The judgment is affirmed in part, and in part reversed and remanded.

FANNING, J., concurs.

DAVIS, J., dissents.

DAVIS, Justice (dissenting).

I concur in the conclusion of the majority that the judgment of the trial court should be affirmed as to the first draft, and that the statute has been correctly construed on the issue that Tyler Bank & Trust Company was the "drawee bank." I am unable to agree with the construction of the Statutes, Articles 342–703 and 342–704, V.A.T.C.S., or the majority's version of the evidence relative to the remaining drafts, and note my dissent.

Before I discuss the construction of the statutes, I pause to state that in my opinion the evidence is sufficient on the first draft to support the implied finding of the trial court that the Bank had notice that the cattle involved had been received. The quoted testimony of the witness Stringer will not support the holding of the majority that the Tyler Bank had instructions from appellee to hold all the drafts except the first two. It will be noted that Stringer said: " * * * I think we did report to them within a 24-hour period or less * * * " and in his testimony where he positively stated: "Yes, there was on each and every one of them," it was in response to a question as to whether or not a request came from the Fort Worth Bank or *T. B. Saunders Commission Company*. Therefore, the testimony is not conclsuive as to whom he reported but construing that testimony with other testimony, it is clear that he was talking to a representative of the Fort Worth Bank.

As stated by Mr. Chief Justice Hickman in the case of Lone Star Gas Co. v. Sheaner, Tex.Sup., 305 S.W.2d 150–154: "Courts will construe the language of a statute liberally to attain its true objective, but not to destroy or reduce its effectiveness." It is admitted that the Fort Worth Bank was the agent of appellee as a matter of law. The question is: Did the agent, by virtue of Sec. 5, Art. 342–703, have the authority, as a matter of law, without the express consent of appellee, to notify the Tyler Bank to hold the drafts in question beyond the 24-hour period and thereby relieve the Tyler Bank of liability on the drafts after they had been deposited with the agent bank as a cash item? I do not so construe the statute. As a matter of fact, the agent could give reasonable instructions "not in conflict with law" and the instruction contended by the Tyler Bank to have been given by the Fort Worth Bank is definitely in conflict with Sec. 3 of Article 342–704, which makes the Tyler Bank liable for failure to return the drafts within 24 hours.

It is true that Sec. 5 of Article 342–703 also provides that the agent and sub-agent banks may be held liable for damages proximately caused by its own negligence, wrongful act, or breach of contract in connection with the collection of an item. But, an agent or sub-agent bank *could not* be guilty of any such acts if such authority has been expressly given by statute. If the construction placed upon the statute by the majority is correct, the Article not only becomes a nullity, but provides an unlimited avenue of escape by banks in such instances. If such construction is correct, the Fort Worth Bank could even at this state of this litigation, exercise the option provided by Sec. 3 of Article 342–704 and waive liability of the Tyler Bank and the

appellee would be without any remedy whatever to recover his funds from either bank.

I would affirm the judgment of the trial court in toto.