## TYLER BANK & TRUST COMPANY v. T. B. SAUNDERS.

No. A-6661. Decided May 28, 1958.
Rehearing Overruled November 12, 1958.
(317 S.W. 2d Series 37)

*Reeves & Reeves, Lawrence & Lawrence,* and *W. Dewey Lawrence,* all of Tyler, for petitioner.

The Court of Civil Appeals erred in affirming the judgment of the trial court in favor of plaintiff, because Article 342-704 does not impose liability on a collecting bank which is not a drawee bank; also said court erred in finding and concluding that the construction placed upon the transaction by the Fort Worth National Bank (where the drafts had been placed for forwarding to the Tyler bank) and the Tyler bank indicates that each bank considered the Tyler bank to be the bank upon which the drafts were drawn, and by which they were payable, and that the Tyler bank entered upon such role without question or protest. College Station Bank v. Fulcher, 296 S.W. 2d 353; Tyler Bank & Trust Co. v. Carder, 132 Fed. Sup. 495.

*Florence, Florence & Garrison,* of Gilmer, *Mack Taylor,* of Fort Worth, *Smith & Smith* and *Kelley Smith,* of Tyler, for respondents.

Mr. Justice Smith delivered the opinion of the Court.

Respondent-plaintiff, T. B. Saunders, doing business under the firm name of T. B. Saunders and Company, instituted this suit against Shaw Packing Company, a corporation, and the petitioner-defendant, Tyler Bank & Trust Company, to recover the sum of $23,808.47 and interest, alleged to be due upon ten certain drafts drawn by respondent-plaintiff allegedly against the Shaw Packing Company and the Tyler Bank & Trust Company. For convenience, the parties shall be hereinafter referred to merely as Saunders, Shaw, and the Tyler Bank, unless other-

wise indicated. The drafts involved were forwarded by the Fort Worth National Bank, hereinafter referred to as the Forwarding Bank, to the Tyler Bank. Saunders alleged in an amended pleading that the Shaw Packing Company, after the institution of the suit, ceased to exist and do business as a corporation, and that the controversy was one for debt as between Saunders and the Tyler Bank. Saunders took the position, and still maintains, that each of the ten drafts sued upon were drawn upon Shaw through the Tyler Bank and that the Tyler Bank was the drawee bank, and that the Tyler Bank held each of the drafts for more than twenty-four hours after such draft had been received by it, all in violation of the provisions of Article 342-704, Vernon's Annotated Civil Statutes of Texas, known as the Banking Code.[1] Saunders pleaded in the alternative negligence on the part of the Tyler Bank. This plea will be discussed later in this opinion. It is undisputed that the drafts were given on dates between September 25, 1951 and October 16, 1951 and were returned unpaid to the Forwarding Bank on November 1, 1951.

---

1.—"Except where otherwise provided in this Code, or by express agreement of parties, items presented to a drawee bank shall be received by it, subject to final adjustments and all clearing house settlements, checks, drafts, credits, advances of money, charges, or entries to accounts (including sight posting), shall be conditional and subject to revocation during the day on which the item is presented (or in case of a time item, the due date), or within twenty-four (24) hours after presentment, exclusive of Sundays and holidays, if it is finally determined that the drawee bank was not at the time of presentment (or in case of a time item, the due date) authorized or obligated to pay the item, and if the drawee bank shall within that time refuse payment and return the item, or undertake to give notice in the manner hereinafter prescribed:

"1. If the item is presented across the counter for payment in cash or for deposit in the drawee bank, the drawee bank shall exercise reasonable diligence within the time above prescribed to give notice, by mail or otherwise, to the bank or person presenting the item that it has refused payment and that it holds the item subject to its or his order.

"2. If the item is presented through a clearing house, the drawee bank shall, within the time prescribed, return the item to the clearing house presenting it.

"3. If the item is presented by mail, the drawee bank shall within the time above prescribed deposit the item in the mail properly stamped and addressed to the bank or person presenting the same. The actual receipt of the notice provided under Section 1 above by the bank or person presenting the item, or the actual receipt of the returned item by the person, bank or clearing house, as provided in Sections 2 and 3 above, shall constitute dishonor within the purview of Article 5938 of the Revised Civil Statutes of Texas. If the drawee bank in refusing payment of any item fails to comply with the provisions of this article within the time above prescribed it shall, at the election of the owner of the item, be deemed to have accepted the item, and shall be liable for the amount thereof. If an item is presented by a bank as agent or subagent of owner, such bank may, in the absence of definite instructions from the owner, exercise the election herein provided for."

It will be noted that the draft[2] is signed by T. B. Saunders & Company and payable to the order of T. B. Saunders and Company. All the drafts are signed by Saunders and not by Shaw. The ten drafts were executed and drawn pursuant to an agreement entered into by J. H. Shaw, an officer of Shaw Packing Company, and Saunders. The agreement being that Shaw would buy cattle and hogs from Saunders and Saunders would collect payment for such purchases by drawing drafts upon Shaw Packing Company; that Saunders would hold the drafts and not deposit them in the Forwarding Bank for a period of four or five days in order that Shaw might have an opportunity to process the stock. Mr. Graves, the manager of T. B. Saunders & Co., testified that the time of four or five days was allowed to intervene before depositing the drafts in order to give Shaw time to slaughter the animals and get the meat in condition for sale. Mr. Graves further testified on cross examination, when each of the drafts were exhibited to him, that the draft was not drawn by the Shaw Packing Company and that it did not bear "their" signature; that the draft (No. 1) was drawn in the office of T. B. Saunders & Company under the direction of the witness; that the drafts were drawn for an amount sufficient to include the purchase price of the cattle and hogs, plus interest at the rate of 6 per cent per annum upon the amount of the purchase price with interest computed for the number of days ensuing between the sale of the cattle or hogs to Shaw and the depositing of the drafts. The evidence shows that several persons acted for Saunders as "clearees" and handled business for Saunders with Shaw, but that all money involved belonged to Saunders. Saunders pleaded that "T. B. Saunders Commission Company, acting upon the advice and authorization of Shaw Packing Company through its agents, James Shaw, and I. R. Smith, drew drafts addressed *to* the Shaw Packing Company *through* the Tyler State Bank and Trust Company * * *." Then follows the list of the drafts involved in this suit.

Attached to each draft was a letter of instruction to the Tyler Bank. This letter was prepared and sent out by the Transit

---

2.—  "T. B. SAUNDERS & CO.  No.
"Live Stock Exchange Bldg.
"(Insignia)  Fort Worth, Texas 9-25 194
"PAY TO THE
ORDER OF  T. B. SAUNDERS & CO. 375  $1642.90
"T. B. SAUNDERS & COMPANY $1,642 & 90 cts. Dollars
With Exchange
"TO Shaw Pkg Co.  )
Tyler State Bank  )  T. B. SAUNDERS & COMPANY
& Tr. Co.  )  By S. Anderson"
Tyler, Texas  )

Department of the Forwarding Bank. It stated that the draft was enclosed for *collection* and *remittance* or credit only when paid. Mr. R. L. Cotton, Manager of the Transit Department, testified that "We usually waited about six days before sending out tracers (inquiries) ; that a tracer was sent out to ascertain if the draft had been received or the present status of the item." One of the tracers sent by the Forwarding Bank is copied below in Footnote 3.[3]

Tyler Bank pleaded several defenses to the suit, but under our view of the case, we need only discuss the issue of whether the Tyler Bank was a "drawee bank" as presented by the pleadings and evidence of Saunders. The solution of such issue necessarily requires this Court to determine whether under the record in this case the Tyler Bank is a drawee bank within the meaning of Article 342-704, supra. If it is, then without question under the facts in this case, it is liable. See Carder v. Tyler Bank & Trust Co., D.C. 132 F. Supp. 495. affirmed 224 F. 2d 687, certiorari denied, 350 U. S. 913, 76 Sup. Ct. 197, 100 L. Ed. 801. At the close of the evidence offered by both parties, Saunders filed a motion for instructed verdict and as grounds therefor alleged that each draft had been sent to the bank in due course, and that when the Tyler Bank failed to deposit each draft in the mail to be returned to the Forwarding Bank within twenty four hours after each draft had been received, or when the Tyler Bank refused to honor each draft within twenty four hours, such failure or refusal constituted an acceptance of the drafts by the Tyler Bank, and by virtue of such acceptance the Tyler Bank became absolutely liable for the amount thereof.

The position of the Tyler Bank on this question is clearly stated in its motion for instructed verdict. The motion was filed

---

3.—   "THE FORT WORTH NATIONAL BANK
"Established 1873
"Fort Worth, Texas
"October 15, 1951
"Tyler State Bank & Trust Co.
"Tyler, Texas
"Gentlemen:
"On October 8, 1951 we sent you for collection Draft drawn on Shaw Pkg. Co. for $2,682.87 upon which we appear to be without returns.
"PLEASE ADVISE PRESENT STATUS OF THIS ITEM.
"Our customer deposited this draft as a cash item, anticipating it would be paid on presentation. If, for any reason, it has not been paid on receipt of this letter, please return it at once giving reason for non-payment.
"Thanking you, we remain
"Yours very truly,
/s/"R. L. Cotton, Manager,
"R. L. Cotton
"Transit Department."

at the close of Saunders' evidence and before the Tyler Bank introduced any evidence. The relevant portions of the motion were as follows:

"I.

"That the Plaintiffs have wholly failed to show any liability of TYLER BANK & TRUST COMPANY to said Plaintiffs.

"II.

"That the only pleadings of the Plaintiffs and the only evidence introduced in the case as the basis of any claimed liability of the TYLER BANK & TRUST COMPANY to the Plaintiffs is upon and by virtue of ten certain drafts and the failure of the TYLER BANK & TRUST COMPANY to return said drafts within twenty four hours after its receipt thereof in alleged violation of the provisions of Article 342-704, and said drafts do not come within the terms of such statute in that the drafts in question here were drawn upon Shaw Packing Company and not upon TYLER BANK & TRUST COMPANY and the TYLER BANK & TRUST COMPANY was not a drawee bank in fact and within the contemplation of such statute and the provisions of such Article apply only to items handled by a drawee bank."

The trial court overruled this motion but granted the motion filed by Saunders. This action resulted in a judgment by the trial court in favor of Saunders against the Tyler Bank allowing a recovery upon each of the ten drafts sued upon. The Court of Civil Appeals affirmed the judgment as to the first draft and reversed and remanded the cause for retrial on the other nine drafts, with one of the Justices dissenting. 308 S.W. 2d 90, 93.

Saunders and the Tyler Bank each filed an application for writ of error. The Tyler Bank's application was granted on points 1 and 6[4] and the Saunders' application was granted because of the granting of the Tyler Bank's application.

The Court of Civil Appeals has held that the Tyler Bank is a "Drawee Bank," and that "the drafts were directed '*to*' Shaw

---

4.—"FIRST POINT: The Court of Civil Appeals erred in affirming the judgment of the trial court, wherein judgment was rendered in favor of Respondent and against the Petitioner under Article 342-704, Revised Civil Statutes of Texas, because such Statute does not impose liability on a collecting bank which is not a drawee bank. (Germane to Assignment of Error No. 1.)

"SIXTH POINT: The Court of Civil Appeals erred in finding and concluding that the construction placed upon the transactions by the Fort Worth National Bank and Petitioner indicated that each bank considered Petitioner to be the Bank upon which the drafts were drawn, and by which they were payable, and that petiitoner entered upon such role without question of protest."

Packing Company and 'to'. Tyler State Bank & Trust Company. The Court then concludes that "it seems clear that Tyler State Bank and Trust Company is a 'bank against which an item is drawn * * *'." The words "bank against which an item is drawn" were taken from the definition of a "Drawee Bank" as defined in Article 342-701, Vernon's Annotated Civil Statutes. The Article defines a "Drawee Bank" as follows:

"(b) The term 'drawee bank' means the bank against which an item is drawn and by which an item [draft] is payable, including banks issuing cashiers' checks, or accepting drafts."

We cannot agree with the holding of the Court of Civil Appeals Considering the form of the drafts, together with all the facts and circumstances in evidence in this case, we cannot say that the drafts were drawn against the Tyler Bank or that the bank became an accepter as contemplated by the statute. The trial court and the Court of Civil Appeals have held the conclusion that the Tyler Bank in the present case is a "Drawee Bank" is supported by the Carder case, supra, and City State Bank in Wellington v. National Bank of Commerce of Altus, Oklahoma, et al., Texas Civ. App., 261 S.W. 2d 749 (venue case), and College Station State Bank v. Fulcher, Texas Civ. App., 296 S.W. 2d 953, no writ history. An analysis of the Carder case, supra, will suffice to demonstrate that these cases are not controlling and do not compel a holding that the Tyler Bank in our case is a "Drawee Bank." In the Carder case, supra, it was admitted that the bank involved was the "Drawee Bank." The court in that case decided the real issue which was whether drawee bank by virtue of the provisions of the statute, supra, accepted the drafts and became liable for the amounts thereof. The opinion quotes from the City State Bank in Wellington case, supra, wherein it held in part:

" 'The proper construction of Art. 342-704, Vernon's Ann. Civ. St., seems to be that in order to escape liability for the amount of an item presented to a drawee bank by mail, and the drawee bank determines that it is not obligated at the time of presentment to pay it, it must, during the day the item is presented, or within twenty-four hours after presentment, deposit the item in the mail, properly stamped and addressed to the bank or the person presenting the same.' "

Our case does not fall within the rule announced in the Carder case, wherein it was held that:

"* * * In the light of the provisions of Article 342-704 of the R.C.S. of Texas it was the duty of the Defendant to either deposit the drafts in the mail properly stamped and addressed to the Worthen Bank the day the drafts were received by the Defendant or within twenty-four hours after they were received by the Defendant. This, the Defendant did not do and the Plaintiffs having elected to assert an acceptance by the Defendant of said drafts the Defendant under the provisions of subsection 3, Article 342-704, supra, is deemed to have accepted the four drafts in question and is liable to the Plaintiffs for the amounts of said drafts. This is true even though the Defendant in holding the drafts the length of time it held same was following a custom and practice that was prevalent throughout the banking business. Such a custom and practice cannot abrogate the statutory law."

■ In our case Saunders takes a position contrary to the theory upon which the case was decided by the Court of Civil Appeals. It is the contention of Saunders, as expressed in his pleadings, briefs, and oral argument in this Court, that the drafts were addressed *to* the Shaw Packing Company *through* (not against) the Tyler Bank & Trust Company. Having assumed such position, he argues that the facts render the Tyler Bank liable under the statute. The full import of such argument means that Saunders desires that this Court hold that the term "drawee bank," although defined in the statute as meaning the bank "against" which an item is drawn and by which an item is payable, also means a bank "through" which an item is drawn. We cannot agree. When items such as the drafts here involved are sent through a bank, that bank becomes an agent of the collecting bank or forwarding bank and the payee (Saunders). The Tyler Bank in our case under all the facts and circumstances was the agent of the payee, Saunders, and as such received for collection and remittance the drafts in question. See First National Bank of Goree v. Talley, 115 Texas 591, 285 S.W. 612; Womack v. Durrett, 24 S.W. 2d 463, er. ref.; Safety Motors, Inc. v. Elk Horn Bank & Trust Co. et al., 118 Fed. Supp. 872, 873.

The evidence clearly shows that the drafts were delivered to the Tyler Bank for collection and not for acceptance. The burden rested with Saunders to establish that the drafts were delivered for acceptance. The failure to discharge such burden compels this Court to hold that the statute does not apply. See Citizens National Bank of Abilene v. Overstreet, Texas Civ. App., 77 S.W. 2d 250, er. ref.

This holding affects the ten drafts involved, and requires a reversal of the judgment of the Court of Civil Appeals wherein it affirmed the judgment of the trial court relative to the draft dated September 25th in the sum of $1,642.90, and the cause must be remanded to the trial court for a new trial.

Since there must be a retrial, we feel it necessary that we give consideration to the points raised by Saunders in his application for writ of error. Points 1, 2, and 3 all concern the question of the admissibility of certain testimony offered by the Tyler Bank by way of a Bill of Execution. The testimony of the witness, Harold Stringer, was offered by the Tyler Bank in support of its defense that it was not guilty of negligence in handling the drafts in question. The testimony was admissible on the issue of negligence.

The judgment of the Court of Civil Appeals affirming the judgment of the trial court as to the draft for $1,642.90 is reversed. In all other respects it is affirmed, and the entire cause is remanded to the trial court for a new trial consistent with this opinion.

All costs are adjudged against the respondent, Saunders.

Opinion delivered May 28, 1958.

Rehearing overruled November 12, 1958.