**FARMERS COOPERATIVE LIVESTOCK MARKET, INC., Appellant,**

v.

**SECOND NATIONAL BANK OF LONDON,**
London, Kentucky, Appellee.

Court of Appeals of Kentucky.

April 26, 1968.

Stuart E. Alexander, Louisville, Tilford & Dobbins, Louisville, of counsel, for appellant.

Robert E. Hatton, Louisville, Robert H. Helton, Jr., Brown, Tooms & Helton, London, for appellee.

CLAY, Commissioner.

This is a suit by appellant payee to recover the face amount of a negotiable instrument which was not honored or paid by appellee bank. The trial court granted the latter summary judgment.

On September 30, 1965, Murlun C. Williams, an alleged agent of Robert Martin, purchased some cattle from appellant. In payment therefor Williams signed a draft in the amount of $7,687.01, payable to the order of appellant. This instrument was drawn on appellee and contained the notation, "To (be) Charged to Acct. of Robert Martin". It was deposited with the Northwestern Bank of Jefferson, North Carolina, and was sent by Northwestern direct to appellee on October 1, with an accompanying letter. This letter, among other things, stated:

"We enclose for collection * * *".

"Wire non-payment of items $1,000.00 or over."

"Please send us your draft."

"Please wire if unpaid upon arrival, but hold for payment with advice to us. * * *".

This instrument, with accompanying instructions, was received by appellee bank on October 4. Though Martin had ample funds deposited with appellee, it had not been authorized by Martin to charge this draft to his account. Appellee promptly wrote Martin but received no reply. It failed to wire Northwestern as the latter had requested. On October 6, Northwestern called appellee and, as stated in appellant's brief, "was told that Martin had not come into the bank to authorize payment of the instrument in question". On October 14, Northwestern was again advised by telephone that the instrument was unpaid. On October 27, the instrument was returned with a letter of transmittal noting, "Unable to collect".

Northwestern had given appellant provisional credit for this item but it was later charged back to appellant's account.

The basis of appellant's claim is that this instrument was a check which was presented for payment to the payor bank, and under the provisions of KRS 355.4–302 appellee was absolutely liable for the face amount of the instrument because it failed to pay or return the item or send notice of dishonor within the time limit therein

prescribed. Insofar as pertinent here, KRS 355.4–302 provides:

"* * * if an item is presented on and received by a *payor bank* the bank *is accountable* for the amount of

"(a) a *demand item* other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depository bank, retains the item *beyond midnight of the banking day of receipt* without settling for it or, regardless of whether it is also the depository bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; * * *." (Emphasis ours.)

For our purposes here, the "midnight deadline" prescribed in this statute is defined in KRS 355.4–104(h) as midnight on the next banking day following the banking day on which the item was received. It is undisputed that appellee failed to take the required action on this instrument within the time limit prescribed.

Appellee takes the position that the instrument was a "draft" drawn on Martin (not appellee bank); that it required acceptance by Martin; that appellee was not the "payor" bank; and that the statute upon which appellant relies has no application. The trial court found appellee was not a "payor" bank (but was a "collecting" bank) and since this instrument was a "non-cash item" under a Federal Reserve Regulation, the statute did not apply. The trial court also found that appellee treated this instrument as a "collection" item and that it was not negligent with respect to its handling.

The parties have fought this battle on the grounds of technical terminology used in the Commercial Code. This is necessary, but we are of the opinion the trial court was led into a misconstruction of pertinent provisions of the law.

There is a vigorous dispute as to whether the instrument in controversy was a "check" or a "draft". This is an immaterial distinction. A check *is* a draft under the definitions contained in KRS 355.3–104(2) (a), (b). The question is whether this instrument was a "demand item" referred to in KRS 355.4–302(a).

"Item" is defined in KRS 355.4–104(g) as "any instrument for the payment of money". A demand item obviously would be one payable on demand. It is clear this instrument was negotiable under KRS 355.-3–104(1) since it (a) was signed by the drawer Williams, (b) contained an unconditional order to pay a sum certain in money, (c) was payable on demand, and (d) was payable to the order of appellee. If this is not a "demand item" under the Commercial Code, we cannot conceive what would be. Since it was drawn on the appellee bank it was a check as defined in KRS 355.3–104(2) (b), but the important thing is that it was a demand draft.

The further significant consideration with respect to handling this item is whether the appellee was the "payor" bank. The statute we have above quoted, KRS 355.4–302, makes only a payor bank accountable when it fails to process the item within the deadline limit. KRS 355.4–105 (b) defines a payor bank as "a bank by which an item is payable as drawn or accepted". This draft was drawn on appellee bank and was payable by it. The fact that it was chargeable to Martin's account is not significant. All checks are chargeable to someone's account. Appellee was the payor bank.

We are at a loss to discern how appellee was, as it contends, a "collecting bank". Such is defined in KRS 355.4–105(d) as "any bank handling the item for collection *except* the payor bank". (Emphasis added.)

Appellee contends that it was a collecting bank because the letter of instructions accompanying the draft contained the words, "We enclose for collection", and appellee treated the item as a collection

item. The use of the term "collection" in the letter certainly cannot be said to have destroyed the statutory scheme governing the collection process. The letter also said, "Please wire if unpaid upon arrival". This draft was presented for *payment*. (Had appellee wired as instructed, it would have discharged its duty as the payor bank and subsequent action taken to settle this account would have been governed by other considerations.) With respect to how appellee treated this item, we can only say that it took the risk of loss by failure to comply with the law. (The accommodation of customers is a meritorious objective, but a payor bank also owes a clear duty of prompt notification to the bank or person presenting the demand item.)

Since appellee was not a "collecting bank", the Federal Reserve Regulation it sought to invoke is not applicable, assuming, without deciding, the banks were bound by that regulation.

One final question in the case concerns the meaning of the term "accountable" in KRS 355.4–302. Appellee suggests appellant suffered no loss because of appellee's delay in dishonoring this draft. A realistic reading of this statute compels the conclusion that failure to meet the midnight deadline authorizes the person presenting the check to assume it has been honored and will be paid. Banking practices require the prompt settlement of such items because of the chain of credit dependent thereon.

We think the question of accountability was properly decided in Rock Island Auction Sales v. Empire Packing Co., 32 Ill. 2d 269, 204 N.E.2d 721 (1965). By strange coincidence that case also involved the sale of cattle, as here. A check payable to the plaintiff was deposited in a collecting bank and sent to the defendant payor bank. Because the drawer's balance was inadequate, the defendant bank held the check five days upon assurance that additional funds would be deposited. This did not transpire and the check was returned. The plaintiff payee of the check brought the suit (as here). The argument was made that the defendant bank was only liable in damages for the actual loss sustained by the plaintiff as a result of the failure to meet the deadline. It was held the statute imposed liability for the full face amount of the item without proof of damages.

It is our opinion that the trial court's conclusions of law constituted a misconstruction of the controlling statutory provisions and that appellant, rather than appellee, was entitled to summary judgment.

The judgment is reversed, with directions to enter judgment for the plaintiff for the face amount of this draft, with appropriate interest.

All concur.