### SAN ANTONIO LIVESTOCK MARKET INSTITUTE et al., Appellants,

v.

### FIRST NATIONAL BANK OF HALLETTS-VILLE, Appellee.

No. 299.

Court of Civil Appeals of Texas.

Corpus Christi.

Aug. 29, 1968.

Cox, Smith & Smith, James R. Hale, San Antonio, for appellants.

Armond G. Schwartz, Hallettsville, Fulbright, Crooker, Freeman, Bates & Jaworski, Royce R. Till, Houston, for appellee.

## OPINION

SHARPE, Justice.

Appellants brought this suit under Art. 342–704, Vernon's Ann.Civ.St., against First National Bank of Hallettsville, appellee, for recovery upon nine drafts, alleging in substance that appellee was a "drawee bank", had retained the drafts in violation of the statute, and that appellants, as payees and owners of the drafts, had elected to treat the bank as having accepted them. After non-jury trial, judgment was rendered that appellants take nothing by their suit.

The above-mentioned statute [1] was in effect at the time of the transactions here in question but has since been repealed and changed by the enactment of the Uniform Commercial Code, Acts 1965, 59th Leg., Vol. 2, p. 1, ch. 721.

The principal question presented is whether appellee was a "drawee bank" as then defined in Art. 342–701(b), V.A.C.S.,

and, particularly, whether the drafts in question were drawn *against* appellee.

The trial court made amended findings of fact and conclusions of law as follows:

## "FINDINGS OF FACT

1. Thirteen drafts aggregating $32,781.-57 were originally sued upon by San Antonio Livestock Market Institute and nine other plaintiffs, who were members thereof, against First National Bank of Hallettsville and Julius Caesar, defendants.

2. By amended petition defendant Julius Caesar was subsequently omitted from the suit and the number of drafts sued upon reduced from thirteen to nine; also, credit being given in the aggregate of $10,999.07, (such amounting to 36.34%) by reason of recovery by plaintiffs against the corporate surety on Caesar's Bond required of livestock buyers by the United States Department of Agriculture. The unpaid balance on the drafts being sued upon was thereby reduced to $19,260.28.

3. The drafts in suit were drawn for purchases made by Julius Caesar from

[1]. Art. 342–704, V.A.C.S., provided: "Except where otherwise provided in this Code, or by express agreement of the parties, items presented to a drawee bank shall be received by it, subject to final adjustment and all clearing house settlements, checks, drafts, credits, advances of money, charges or entries to accounts, (including sight posting), shall be conditional and subject to revocation during the day on which the item is presented (or in case of a time item, the due date), or until midnight of the banking day after the day of presentment, exclusive of Sundays and holidays, if it is finally determined that the drawee bank was not at the time of presentment (or in case of a time item, the due date) authorized or obligated to pay the item, and if the drawee bank shall within that time refuse payment and return the item, or under take to give notice in the manner hereinafter prescribed:

1. If the item is presented across the counter for payment in cash or for deposit in the drawee bank, the drawee bank

shall exercise reasonable diligence within the time above prescribed to give notice, by mail or otherwise, to the bank or person presenting the item that it has refused payment and that it holds the item subject to its or his order.

2. If the item is presented through a clearing house, the drawee bank shall, within the time prescribed, return the item to the clearing house presenting it.

3. If the item is presented by mail, the drawee bank shall within the time above prescribed deposit the item in the mail properly stamped and addressed to the bank or person presenting the same. The actual receipt of the notice provided under Section 1 above by the bank or person presenting the item, or the actual receipt of the returned item by the person, bank or clearing house, as provided in Sections 2 and 3 above, shall constitute dishonor within the purview of Article 5938 of the Revised Civil Statutes of Texas. If the drawee bank in refusing payment of any items fails to comply with

the various plaintiffs. Such drafts were subsequent to the release of the livestock by plaintiffs to Caesar.

4. None of the plaintiffs maintained an account witth First National Bank of Hallettsville, nor had they ever done so.

5. First National Bank of Hallettsville had no interest in the cattle purchased by Caesar, nor was he the agent or representative of such Bank.

6. Julius Caesar maintained an account in the First National Bank of Hallettsville under the name 'Julius Caesar Cattle Account', such being a checking account. In the weeks preceding the mailing of the nine drafts in suit to First National Bank of Hallettsville, other drafts were paid by First National Bank of Hallettsville after presentment to and acceptance by Julius Caesar.

7. All of the drafts in suit were drawn by one L. C. Fergus of San Antonio, such L. C. Fergus being unknown to First National Bank of Hallettsville, her name not appearing on the signature card of Julius Caesar Cattle Account at the Bank and not being authorized to draw on such account in First National Bank of Hallettsville.

8. All of the drafts in suit were drawn:
  'To Julius Caesar Cattle Account
  First National Bank
  Hallettsville, Texas.'

9. All of the drafts in suit were labelled:

  'Customer's Draft' and were on printed forms provided by and headed
  'Frost National Bank
  of San Antonio, Texas.'

10. Seven of the drafts in suit were placed in the National Bank of Commerce of San Antonio and two in the

Alamo National Bank of San Antonio, Texas, by the plaintiffs.

11. The National Bank of Commerce of San Antonio sent seven of the drafts to First City National Bank of Houston to be forwarded to First National Bank of Hallettsville; none of the drafts being sent through the Federal Reserve Bank.

12. All drafts in suit were forwarded to First National Bank of Hallettsville with letters of instructions stating that such drafts were being sent for collection.

13. Immediately upon receipt of each draft, First National Bank of Hallettsville did try to contact Julius Caesar at his office in Hallettsville, but was unable to do so. The bank did contact Verlie Caesar, wife of Julius Caesar, but was unable to obtain any instructions from her in the absence of Julius Caesar.

14. On each occasion the said Verlie Caesar advised the bank she had received no instructions from Julius Caesar as to whether such drafts should be accepted, and thus could not accept them for payment until she received such instructions from him.

15. Each draft in suit was returned to the forwarding bank by First National Bank of Hallettsville when such Bank was unable, after reasonable efforts to obtain instructions from Caesar failed.

16. All of said drafts in suit were held by said First National Bank of Hallettsville for more than twenty-four hours exclusive of Sundays and holidays before being returned unpaid.

17. Instructions from Caesar as to whether or not to pay, in the instance of each draft in suit, were not forthcoming with 24 hours of receipt of such item by said Bank, exclusive of Sundays

the provisions of this Article within the time above prescribed it shall, at the election of the owner of the item, be deemed to have accepted the item, and shall be liable for the amount thereof. If an item is presented by a bank as agent or sub-agent of owner, such bank may, in the absence of definite instructions from the owner, exercise the election herein provided for. Acts 1943, 48th Leg., p. 154, ch. 97, subch. VII, art. 4; Acts 1957, 55th Leg., p. 1295, ch. 434, § 1."

and holidays, nor were same received by said Bank before such items were returned.

18. Plaintiff San Antonio Livestock Market Institute contacted First National Bank of Hallettsville as to why the draft for $19,167.83 was being held and upon being advised that such Bank was unable to present it to Caesar, plaintiff instructed such Bank to hold it further in an effort to make presentment.

19. Plaintiff San Antonio Livestock Market Institute instructed First National Bank of Hallettsville to hold its draft of $19,167.83 to a date certain in an attempt to get instructions from Caesar as to payment; such draft being returned at the instructed time.

## CONCLUSIONS OF LAW

1. Defendant First National Bank of Hallettsville under all the facts and circumstances was the agent of the forwarding banks and the payees, and as such received for collection and remittance the drafts in question.

2. The drafts were delivered to First National Bank of Hallettsville for collection and not for acceptance.

3. Plaintiffs failed to discharge the burden resting on them to establish that the drafts were delivered for acceptance. The statute (Art. 342–704 V.A.T.S.) does not apply.

4. Plaintiff San Antonio Livestock Market Institute waived, by reason of its conduct with reference to the draft for $19,167.83, any alleged violation of Article 342–704 V.A.T.S."

In addition to the above amended findings and conclusions, the trial court, by separate order, also granted appellants' requested finding No. 4, reading as follows:

"Plaintiffs (appellants) have elected, under the provisions of Article 342–704, Vernon's Annotated Texas Civil Statutes, to treat First National Bank of Halletts-ville as having accepted said drafts and as having become liable for the amounts thereof."

Appellants assert four points of error, as follows:

## "FIRST POINT

"The trial court erred in finding that the drafts were delivered for collection to Defendant, as agent of the forwarding banks and the payees, because there is no evidence to support such finding.

## "SECOND POINT

"The trial court erred in holding that Plaintiffs had the burden of establishing that the drafts were delivered to Defendant for acceptance.

## "THIRD POINT

"The trial court erred in finding that Plaintiff Institute instructed Defendant to hold the draft for $19,167.83 'in an effort to make presentment' and 'in an attempt to get instructions from Caesar as to payment,' because there is no evidence to support such findings.

## "FOURTH POINT

"The trial court erred in holding that Plaintiff Institute waived any violation of Article 342–704."

In its original brief appellee has questioned the sufficiency of appellants' first point of error because it does not indicate the specific action of the trial court of which complaint is made. Appellants, by their reply brief, assert that their first point is directed to items 1 and 2, designated by the trial court as conclusions of law. Appellants say that their contention is that there is no evidence to support a finding of fact "that the drafts were delivered for collection to appellee as agent of the forwarding banks and the payees." We can ascertain from the statement and argument under appellants' first point that such contention, as clarified by their reply brief, has been asserted by them. We will consider

appellants' "no evidence" contention under the rules reiterated in Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.Ct.1965).

Appellants recognize that they had the burden of showing appellee to be a "drawee bank" which was defined in Art. 342–701 (b), V.A.C.S. (also now repealed by the Uniform Commercial Code), as follows:

"The term 'drawee bank' means the bank against which an item is drawn and by which an item is payable, including banks issuing cashiers' checks, or accepting drafts."

On this appeal, appellants contend that they carried that burden in the court below by establishing that the drafts were drawn *against* appellee bank and were payable by it. Appellants further say that there was no necessity for them to establish that the drafts were delivered to appellee for acceptance, and they do not base their claimed right of recovery on that theory, although under their second point they complain of Conclusion of Law No. 3 made by the trial court in such connection, which question will be separately discussed.

■ Under appellants' first point they argue that the evidence is legally insufficient to support trial court findings that the drafts in question were delivered for collection to appellee bank as agent of the forwarding banks and the payees. Appellants' evidence concerning the routing of the drafts was in connection with the seven drafts deposited in the National Bank of Commerce of San Antonio. They were forwarded by that bank to its corresponding bank, First City National Bank of Houston, accompanied by letters of transmittal containing the words "We enclose for collection and credit/remittance." In that portion used for designating the drawee, the letters showed the drawee to be Julius Caesar cattle account. Four of the letters of transmittal each contained a stamped provision 'Instruct collecting bank to advise you by wire if not paid promptly after presentment. In this event, please advise us by bank wire." The other letters of trans-

mittal each contained a stamped provision "Instruct collecting bank to return if not paid promptly after presentation, giving reason for non-payment." The difference between the two instructions being that in the latter case the collecting bank was not required to wire if the drafts were not accepted by the drawee. Mr. Weldon Humble, Vice President of First City National Bank, Houston, Texas testified in substance that the drafts sent through his bank were collection items and they were handled as such under instructions contained in the letters of transmittal received by it; that the drafts were drawn against the account of Julius Caesar cattle account at the First National Bank of Hallettsville. The First City National Bank of Houston forwarded the drafts to appellee with endorsements "for collection only." At some undetermined time a cancelled stamp was placed over such endorsements. In such connection the evidence shows that the drafts were returned by the Hallettsville bank through the Houston bank to the San Antonio bank and were later sent back as in the original instance with other "for collection" endorsements. When the drafts were originally sent by the Houston bank to the Hallettsville bank, they were accompanied by letters of transmittal referring to appellee as "collecting bank". As is shown by the findings of fact, appellee was unable to contact Julius Caesar and to make presentation to him or collect the drafts. W. W. Davis, Executive Vice-President of appellee bank, testified that the drafts were collection items and that the instructions received with them meant that appellee was to present them to the drawee for acceptance. Appellants' contention that there was no evidence that the drafts were delivered for collection to appellee bank as agent for the forwarding banks and the payees is without merit.

■ Appellee's reply to appellants' contentions under their first point is in substance that under the evidence and the findings of fact and conclusions of law made by the trial court, the appellee bank was not

a "drawee bank" and therefore, not liable as such to appellants. Here appellee relies heavily upon the case of Tyler Bank and Trust Company v. Saunders, 159 Tex. 158, 317 S.W.2d 37 (1958). In that case the drafts were drawn as follows:

"To Shaw Pkg Co.
Tyler State Bank
& Tr. Co.
Tyler, Tex."

The Supreme Court held that the Tyler Bank was not a "drawee bank" since the drafts were not drawn *against* it, nor was it established that said bank had become an acceptor as contemplated by the statute. The Court, in part, said:

"The Court of Civil Appeals has held that the Tyler Bank is a 'Drawee bank', and that the drafts were 'directed *"to"* Shaw Packing Company and *"to"* Tyler State Bank & Trust Company.' The Court then concludes that 'it seems clear that Tyler State Bank and Trust Company is a "bank against which an item is drawn * * *"' The words 'bank against which an item is drawn' were taken from the definition of a 'Drawee Bank' as defined in Article 342–701, Vernon's Annotated Civil Statutes. The Article defines a 'Drawee Bank' as follows:

'(b) The term "drawee bank" means the bank against which an item is drawn and by which an item (draft) is payable, including banks issuing cashiers' checks, or accepting drafts.'

We cannot agree with the holding of the Court of Civil Appeals. Considering the form of the drafts, together with all the facts and circumstances in evidence in this case, we cannot say that the drafts were drawn against the Tyler Bank or that the bank became an acceptor as contemplated by the statute."

\*　\*　\*　\*　\*　\*

"In our case Saunders takes a position contrary to the theory upon which the case was decided by the Court of Civil Appeals. It is the contention of Saunders, as expressed in his pleadings, briefs, and oral argument in this Court, that the drafts were addressed *to* the Shaw Packing Company *through* (not against) the Tyler Bank & Trust Company. Having assumed such position, he argues that the facts render the Tyler Bank liable under the statute. The full import of such argument means that Saunders desires that this Court hold that the term 'drawee bank', although defined in the statute as meaning the bank 'against' which an item is drawn and by which an item is payable, also means a bank 'through' which an item is drawn. We cannot agree. When items such as the drafts here involved are sent through a bank, that bank becomes an agent of the collecting bank or forwarding bank and the payee (Saunders). The Tyler Bank in our case under all the facts and circumstances was the agent of the payee, Saunders, and as such received for collection and remittance the drafts in question. See First National Bank of Goree v. Talley, 115 Tex. 591, 285 S.W. 612; Womack v. Durrett, Tex.Civ.App., 24 S.W.2d 463, er. ref.; Safety Motors, Inc., v. Elk Horn Bank & Trust Co., D.C., 118 F.Supp. 872, 873.

"The evidence clearly shows that the drafts were delivered to the Tyler Bank for collection and not for acceptance. The burden rested with Saunders to establish that the drafts were delivered for acceptance. The failure to discharge such burden compels this Court to hold that the statute does not apply. See Citizens' National Bank of Abilene v. Overstreet, Tex.Civ.App., 77 S.W.2d 250, er. ref."

The holdings in *Saunders* have been cited with approval in Branch Banking & Trust Co. v. Bank of Washington, 255 N.C. 205, 120 S.E.2d 830 (1961). There the drafts were addressed as follows:

"To Washington Hog Market
The Bank of Washington
Washington, N. C."

The cited case involved an action against the Bank of Washington drafts forwarded to it under the theory that said bank had accepted the drafts by holding them beyond the permissible time limit. The factual situation was very similar to the instant case. The drafts were drawn by one not authorized to draw items on the Washington Hog Market account in the Bank of Washington, and the drawer had no account in that bank. The basic question there, as in the instant case, was whether the bank to whom the drafts were sent was a "drawee bank." The Court held that the Bank of Washington was not a "drawee bank" but was merely a collecting bank, and cited *Saunders* as authority for such holding. The Court in part said:

"Absent evidence of special arrangements, the reasonable inference is that a draft is addressed to a party obligated to the drawer to make such payment."

In our case the drafts were drawn as follows:

"To Julius Caesar Cattle Account
First National Bank
Hallettsville, Texas"

There is no evidence of special arrangements in this case as to the drawee, and it may be reasonably inferred that the drafts here involved were addressed to one obligated to make payments on them. Appellee was not obligated either to the drawer or the payees of the drafts and they were addressed to one other than appellee. The effect of the findings and conclusions made by the trial court is that appellee was not a "drawee bank." We hold that the findings are supported by evidence and that such conclusion is correct. Under the evidence herein and the holdings in *Saunders,* the drafts here were not drawn *against* appellee bank, and their being payable *at* or *through* it is not sufficient to establish that appellee was a "drawee bank." Appellants' point one is overruled.

Under their second point appellants contend that the trial court erred in holding that it had the burden of establishing that the drafts were delivered to appellee for acceptance, and complains of conclusion of law No. 3 in such respect. The discussion of appellants' point one is also applicable to their second point. We believe that conclusion No. 3 was made by the trial court and can be considered by this Court in connection with the question of whether the drafts were drawn *against* appellee and were payable by it. It is apparent that had appellee been the drawee of the drafts, they would have been delivered to it for acceptance; and not for collection, as was done in this case. Appellants also rely on the cases of Carder v. Tyler Bank & Trust Company, 132 F.Supp. 495 (U.S.D.C., E.D. Tex., 1954, affirmed 224 F.2d 687 (5th Cir. 1955), cert. den. 350 U.S. 913, 76 S.Ct. 197, 100 L.Ed. 801 (1955); and College Station State Bank v. Fulcher, 296 S.W.2d 953 (Tex.Civ.App., Texarkana, 1956, n. w. h.). Both of these cases were referred to in Tyler Bank & Trust Co. v. Saunders, supra, and *Carder* was discussed in some detail. The Supreme Court held that those cases were not controlling and did not compel a holding that the Tyler Bank in *Saunders* was a "drawee bank." An analysis of *Saunders* reflects that the Court there considered the factor that the drafts were not delivered for acceptance in reaching the conclusion that the Tyler Bank was not a "drawee bank", because the drafts were not drawn *against* it. In the instant case it appears that the trial court properly followed the same procedure. In this case the appellants take the position that there was no necessity for them to establish that the drafts were delivered to appellee for acceptance, and they do not rely upon that theory of recovery. Appellants do not argue that appellee became liable as an acceptor of the drafts in any manner other than the bank against which the drafts were drawn and by which they were payable. It appears that in any event, aside from Conclusion of Law No. 3, the judgment is supported by the other conclusions and findings made by the trial court. Appellants' point two is overruled.

By their points three and four, appellants claim that the trial court erred in finding that appellant instructed appellee to hold the draft for $19,167.83 "in an effort to make presentment" and "in an attempt to get instructions from Caesar for payment, because there is no evidence to support such findings and in holding that appellant San Antonio Livestock Market Institute waived any violation of Art. 342–704, V.A.C.S. Here involved are findings of fact 18 and 19 and conclusion of law No. 4. It is apparent that our holdings in connection with appellants' point one primarily control disposition of this case and are applicable to the draft for $19,167.83 involved in appellants' points three and four as well as to the other drafts. However, if, contrary to our holding, appellee had been a "drawee bank" as to the draft for $19,167.83, nevertheless, the above-mentioned findings of the trial court are supported by evidence and its conclusion is correct; and appellee's contention of waiver of any alleged violation of Art. 342–704 would be well taken. Mr. W. W. Davis, Executive Vice-President of appellee bank, testified in substance that Mr. Driskell Kothmann, manager of appellant San Antonio Livestock Market Institute, instructed him to hold the draft for $19,167.83 until March 13, 1964. Mr. J. H. Simpson, Jr., Vice-President and cashier of appellee bank, testified that he listened to the telephone conversation between Kothmann and Davis, and that when Davis inquired if Kothmann wanted the draft returned, Kothmann answered, "No, don't return it. Hold it. Julius is all right. I have dealt with him for years, and I never had a bit of trouble with him." Kothmann admitted having a telephone conversation with Davis about the matter, but denied giving instructions to hold the draft. Kothmann conceded that strenuous efforts had been made to collect from Julius Caesar, that Caesar was still indebted for the unpaid balance on the livestock and that an amount equal to 36.34% of the face amount of the drafts had been recovered upon Caesar's agricultural bond. The trial court was authorized to accept the testimony of Davis and Simpson and reject that of Kothmann in connection with the instructions to hold the draft for $19,167.83. Under these conditions the holding of the trial court that appellant San Antonio Livestock Market Institute waived any alleged violation of Art. 342–704, V.A.C.S., must be upheld. In connection with the questions of waiver of rights and election by the holder of a check under the said statute, see Exchange Bank & Trust Co., v. Pure Ice & Cold Storage Company, 415 S.W.2d 897 (Tex.Sup.Ct., 1967). Appellants' points three and four are overruled.

The judgment of the trial court is affirmed.