**WILHELM FOODS, INC., Plaintiff,**

v.

**NATIONAL BANK OF NORTH AMERICA, Defendant and Third-Party Plaintiff,**

v.

**CENTAUR PACKING CO., INC., and Samuel Schweid, Third-Party Defendants.**

**No. 72 Civil 1458.**

United States District Court,
S. D. New York.

Aug. 21, 1974.

Hahn, Hessen, Margolis & Ryan, New York City, for plaintiff; Francis J. Ryan, Jr., Daniel A. Zimmerman, New York City, of counsel.

Cole & Deitz, New York City, for defendant National Bank of North America; Edward N. Meyer, Joseph A. Di-Benedetto, New York City, of counsel.

Schmalholz & Plotkin, New York City, for third-party defendants Centaur Packing Co., Inc. and Samuel Schweid.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Wilhelm Foods, Inc., a meat-packer doing business in Denver, Colorado, seeks to recover damages from the defendant, National Bank of North America (the Bank), a national banking association, based upon a series of eight drafts totaling $181,638.80 drawn by plaintiff's predecessor [1] (Wilhelm), forwarded to the Bank, and intended to obtain payment for shipments of meat to DaFran Meat Co. (DaFran) in July and August 1971.

Four separate causes of action are set forth. The first alleges that each of the drafts was mailed to and received by the Bank; that it was a "payor" bank; and that it is liable for the face amount of each draft because it neither paid, returned, nor sent notice of dishonor prior to the expiration of the "midnight deadline." [2] The second alleges that the Bank, which was a substantial secured creditor of DaFran, intentionally mishandled all such drafts in order to improve its position and to reap gains from DaFran's collateral as enhanced by the shipments of meat, and that as a result plaintiff will be unable to collect the amount of the drafts. The third cause of action charges that the Bank negligently handled the drafts thereby depriving Wilhelm of the opportunity of collecting the full amount thereof. The fourth cause of action alleges that the Bank's conduct was willful, wanton and malicious and seeks punitive damages.

Defendant denies the essential allegations of the four causes of action and advances affirmative defenses of election of remedies, laches, estoppel and contributory negligence.

The parties have taken extensive depositions of one another and of witnesses.

1. Wilhelm Foods, Inc., a Colorado corporation. Plaintiff is a Delaware corporation.

2. N.Y.U.C.C. § 4–104(1)(h) (McKinney 1964) provides:
"'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later."

The Bank moved for summary judgment on the ground that all four causes of action are barred by an election of remedies, and, alternatively, for summary judgment dismissing the first, third and fourth causes of action. Thereupon plaintiff crossmoved for summary judgment on the first and third causes of action. The court is of the view that realistically, as the parties appear to acknowledge in their extensive affidavits and briefs, only the first cause of action is ripe for summary judgment since the basic facts pertaining thereto are not in dispute although they differ as to the legal consequences. Accordingly, matters touching upon the other causes of action will not be referred to herein except to the extent they may bear upon the issues under the motions made with respect to the first cause of action.

Prior to July 29, 1971, Wilhelm sold meats to DaFran, one of its largest customers, on open account on weekly credit terms, but as of that date DaFran was behind in its payments. Plaintiff, in an effort to assure prompt payment of future shipments, unilaterally decided, without notifying DaFran,[3] to draw "sight" drafts as a medium of collection of the purchase price for each shipment. Accordingly, commencing July 29 and up to August 13, 1971, plaintiff made shipments of meat to DaFran totaling over $181,000 and for each shipment drew a draft which it deposited with its local bank in Denver, Colorado, which the local bank then airmailed, along with a "transmittal letter," to the Bank in New York where DaFran maintained a checking account. The meat shipments were consigned and went directly to DaFran which could and did obtain delivery thereof without paying the drafts or producing the original bills of lading which Wilhelm retained. With each shipment, Wilhelm continued, as in the past, to send DaFran an invoice for the purchase price. The draft drawn by plaintiff in each instance was substantially the same. It was dated the date shipment was made, was payable at sight, was signed by Wilhelm as drawer, was payable to its local bank and, contained in the space for the drawee, the following:

"To: National Bank of North America
Seventh Avenue at 38th Street
New York, N. Y.

Account of: DaFran Meat Company
635 Brook Avenue
Bronx, New York"[4]

Accompanying each draft transmitted to the Bank was a copy of the invoice for the corresponding shipment: the last three drafts were also accompanied by copies of the bill of lading. Upon receiving each draft with its attachments, the Bank's representative telephoned DaFran and was told to hold the drafts and not to pay them.

During the period between August 6 and August 18, representatives of the Denver banks and of the plaintiff inquired of defendant whether the drafts would be paid but received no definite advice. The Bank did not pay the drafts and finally returned them on August 20 to the Denver forwarding banks.

During the period in question, that is, from August 2 through August 20, 1971, the Bank's relationship with DaFran continued as previously. It advanced moneys to DaFran on its accounts receivable; it honored DaFran's checks against deposits; and with DaFran's consent, paid drafts drawn upon it by its suppliers. On August 20 DaFran decided to go out of business and so notified the Bank as well as its other creditors. DaFran's indebtedness to the Bank was satisfied through collateral, principally accounts receivable. The balance of collateral beyond the indebt-

3. Plaintiff did not notify DaFran that it was utilizing drafts until after four drafts had been issued.

4. The first draft omitted "Account of." The first three drafts were deposited with and payable to the Colorado National Bank, and the remaining drafts were deposited with and payable to the Northeast Colorado National Bank.

edness was returned to DaFran. The other creditors of DaFran including plaintiff, whose President acted as chairman of a creditors committee, agreed to and did accept 30% in full settlement of their claims, the funds for which were derived from the proceeds of a bulk sale of DaFran's assets in October 1971 and also from the excess collateral that had been returned to DaFran by the Bank. The amount so returned exceeded the total sum of the merchandise shipped to DaFran, in connection with which the drafts here at issue had been drawn by plaintiff. Plaintiff received a total of $61,307.70 in settlement of its claim against DaFran, but nonetheless is suing to recover from the Bank the full amount of the eight drafts.

Under the first cause of action, plaintiff seeks to hold defendant accountable for the full amount of the eight drafts under § 4–302 of the New York Uniform Commercial Code:[5]

*"Payor Bank's Responsibility for Late Return of Item*

"In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of Section 4–207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

"(a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

"(b) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents."

Plaintiff, in seeking to hold the defendant liable under this section for retaining the drafts beyond the prescribed time limits, contends upon the facts that the Bank was a "payor bank"; the defendant, on the other hand, upon the same facts contends that it was a "collecting bank,"[6] and whatever may be its liability as such for alleged negligence in handling the drafts,[7] it cannot be held liable as a payor bank under the first cause of action.

Section 4–105(b) defines a payor bank as follows: " 'Payor bank' means a bank by which an item is payable as drawn or accepted." Since the drafts were not accepted by either the Bank or DaFran,[8] the defendant could be a payor bank only if it was a bank by which the drafts were "payable as drawn." The parties agree that under the facts of this case for the defendant to be a payor bank it must be the drawee of the drafts.[9] Plaintiff argues that it is clear from the face of the drafts that the Bank was the drawee since the order to

---

5. N.Y.U.C.C. § 4–302 (McKinney 1964) ; *See* N.Y.U.C.C. § 4–102(2) (McKinney 1964).

6. N.Y.U.C.C. § 4–105(d) (McKinney 1964) provides: " 'Collecting bank' means any bank handling the item for collection except the payor bank."

7. *Cf.* N.Y.U.C.C. § 4–202; 4–103(5) (McKinney 1964). *See* Bank of America Nat'l Trust & Sav. Ass'n v. Security Pac. Nat'l Bk., 23 Cal.App.3d 638, 100 Cal.Rptr. 438, 442 (1972) which notes that Section 4–302 " . . . creates a liability independent of negligence . . . or conversion . . . for the amount of the item. . . . "; Rock

Island Auction Sales, Inc. v. Empire Packing Co., Inc., 32 Ill.2d 269, 204 N.E.2d 721, 722–723 (1965).

8. N.Y.U.C.C. § 3–410(1) (McKinney 1964) provides: "Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone . . . . "

9. *See* N.Y.U.C.C. § 4–105, Comment 2, which states that "The term payor bank includes a drawee bank . . ." and also a bank at which a draft is payable by the terms of an acceptance made under § 3–121.

pay was directed to it.[10] Contrariwise, the Bank urges that it is clear from the face of the draft that the draft was directed to DaFran and not to it, but that in any event an obvious ambiguity exists since both the Bank and DaFran are designated and that extrinsic evidence establishes that DaFran was the drawee. The plaintiff's position disregards what appears on each draft already referred to, to wit:

> "To: National Bank of North America
>
> \* \* \*
>
> Account of: DaFran Meat Company
>
> \* \* \* \* \* \* "

■ The inclusion of both names in the space used for the name of the drawee does create an ambiguity and surrounding facts and circumstances

may be considered in resolving it.[11] So considered, the conclusion is warranted that the defendant was not the drawee of the drafts or the payor bank but rather was a collecting bank.

■ First, the transmittal letters from the Denver banks, the forwarding banks, in each instance stated that Da-Fran was the "payer" of the draft or that it was " . . . drawn on your customer DaFran Meat Co." [12] These instructions from the Denver banks indicate that the drafts were not presented to [13] defendant for payment—to the contrary each states that the enclosed drafts were for "collection".[14] Second, since DaFran never authorized the Bank to make payments out of its account on Wilhelm's order, there was no account out of which Wilhelm could order the Bank to make payment.[15] Under all the

---

10. *See* N.Y.U.C.C. § 3–104 (McKinney 1964) which defines a draft as an ". . . order to pay . . . given by . . . the . . . drawer . . . ."

11. The Uniform Commercial Code contains no rule for resolving the ambiguity. *Cf.* N. Y.U.C.C. §§ 3–102(1)(b); 3–118; 3–402 (McKinney 1964).

The state courts have not attributed any particular significance to the order in which the two names appear or the presence of the words "account of" before one of the names, but rather have resorted to certain types of extrinsic evidence to resolve the ambiguity. *Compare* Farmers Coop. Livestock Mkt. v. Second Nat'l Bk., 427 S.W.2d 247 (Ky.1968) (draft *"To Second National Bank To be charged to account of Robert Martin"*—held bank was drawee); Phelan v. University Nat'l Bk., 85 Ill.App.2d 56, 229 N.E.2d 374 (1967) (draft *"To University National Bank, a/c Georgia Barlas"*—held bank not the drawee); San Antonio Livestock Mkt. Inst. v. First Nat'l Bk., 431 S. W.2d 408 (Tex.Civ.App.1968) (draft *"To Julius Caesar Cattle Account, First National Bank"*—held bank not the drawee); Branch Banking & Trust Co. v. Bank of Washington, 255 N.C. 205, 120 S.E.2d 830 (1961) (draft *"To Washington Hog Market, The Bank of Washington"*—held bank not the drawee); Tyler Bank & Trust Co. v. T. B. Saunders, 159 Tex. 158, 317 S.W.2d 37 (1958) (draft *"To Shaw Pkg. Co., Tyler State Bank & Tr. Co."*—held bank not the drawee).

12. The state courts have uniformly looked to such instructions to resolve ambiguity as to

the drawee's identity. Phelan v. University Nat'l Bk., 85 Ill.App.2d 56, 229 N.E.2d 374, 377 (1967); Farmers Coop. Livestock Mkt. v. Second Nat'l Bk., 427 S.W.2d 247, 249–250 (Ky.1968); Branch Banking & Trust Co. v. Bank of Washington, 255 N.C. 205, 120 S.E.2d 830, 838 (1961); Tyler Bk. & Trust Co. v. T. B. Saunders, 159 Tex. 158, 317 S.W.2d 37, 40 (1958); San Antonio Livestock Mkt. Inst. v. First Nat'l Bk., 431 S.W.2d 408, 412 (Tex.Civ.App.1968).

13. N.Y.U.C.C. § 3–504(1) (McKinney 1964) provides that "Presentment is a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder."

14. The Colorado National Bank's form states: "We enclose the above described item for collection and payment or return." The Northeast Colorado National Bank's form states: "WE ENCLOSE FOR COLLECTION and ( ) remittance or ( ) credit the item described above . . . ."

15. Branch Banking & Trust Co. v. Bank of Washington, 255 N.C. 205, 120 S.E.2d 830, 837 (1961); *See* San Antonio Livestock Mkt. Inst. v. First Nat'l Bk., 431 S.W.2d 408, 414 (Tex.Civ.App.1968).

Plaintiff's reliance upon Farmers Coop. Livestock Mkt. v. Second Nat'l Bk., 427 S. W.2d 247 (Ky.1968), is misplaced; there the Court resolved the ambiguity in favor of a plaintiff who was not the drawer of the draft and the creator of the ambiguity, but was a seller of goods who had received the draft from the drawer-purchaser.

circumstances, the Bank was justified in assuming the draft was forwarded to it for collection and that the drawee was DaFran rather than itself.

■ Plaintiff attempts to overcome these substantial factors by affidavits of its officers that they were unaware of the nature of the Denver banks' transmittal letters; plaintiff, however, had designated those banks to act for it.[16] Plaintiff further relies upon affidavits of its officers that they understood the Bank would pay each draft out of its own funds without DaFran's consent and thereafter look to DaFran for reimbursement. The defendant, however, points to the deposition testimony of plaintiff's officers to the contrary, in substance, that they understood the drafts were drawn on DaFran and that the Bank had to obtain DaFran's permission before making payment of the drafts; and in one instance it stresses the pretrial testimony of another of plaintiff's officers that he understood the drafts were being forwarded to the Bank to serve as collection agent. In any event, the subjective intention of the drawer is not determinative of the issue.

■ Under all the facts presented, the court concludes that defendant was not a payor bank or the drawee of the drafts; accordingly, it is entitled to summary judgment upon the first cause of action and the crossmotion of plaintiff is denied. This disposition makes it unnecessary to consider the Bank's alternative basis for summary judgment that plaintiff is barred from recovery herein because of election of remedies in that it participated in the settlement with DaFran and accepted the dividend paid therefor in full satisfaction. This disposition is without prejudice to defendant's assertion of the estoppel defense as to the remaining causes of action as to which the respective parties' motions are denied.

---

16. *See* N.Y.U.C.C. § 4–201(1) (McKinney 1964).